[No. B189792. Second Dist., Div. Seven. July 18, 2006.]

In re CARMEN M., a Person Coming Under the Juvenile Court Law.
CARMEN M., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Real Party in Interest.

**COUNSEL**

Martha A. Matthews for Petitioner.

No appearance for Respondent.

Raymond G. Fortner, Jr., County Counsel, Larry Cory and Liana Serobian, Assistant County Counsel, for Real Party in Interest.

OPINION

**PERLUSS, P. J.**—Do the statutory provisions broadly empowering the juvenile court to make any reasonable order for the care and supervision of a dependent child include the authority to order a child who acknowledges a prior drug abuse problem to submit to a drug test if the staff of the group home in which she resides believes she is under the influence of drugs? If the juvenile court is statutorily authorized to order a dependent child to submit to drug testing, is that authority consistent with the child's fundamental right of privacy protected by article I, section 1 of the California Constitution? We conclude the answer to both questions is yes and accordingly deny Carmen M.'s petition for a writ of mandate directing respondent Los Angeles Superior Court to vacate its order requiring her to submit to drug testing upon request by the staff of the David & Margaret Home.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Carmen M.'s Original Contact with the Department of Children and Family Services and the Voluntary Services Agreements*

Carmen H., the mother of then 16-year-old Carmen M., entered into a voluntary family maintenance agreement under Welfare & Institutions Code section 301[1] with the Los Angeles County Department of Children and Family Services (Department) in April 2005 after the Department learned that Carmen H. had physically abused Carmen M. by using an extension cord to discipline her. The Department's investigation also revealed Carmen M. had been suspended from school on repeated occasions for smoking marijuana on school property, was failing all of her classes and was drinking alcohol and expressing suicidal ideations. Carmen H. stated she was overwhelmed by Carmen M.'s behavior and requested assistance.

On April 19, 2005, an in-home counselor helped Carmen M. enroll in an alcohol and drug abuse program. On June 2, 2005, Carmen M. tested positive for methamphetamines and marijuana. The Department recommended Carmen M. be placed in a residential treatment facility, but Carmen M. failed to cooperate with that plan. On July 12, 2005, the family preservation program cancelled its services to Carmen H. and Carmen M. Because of Carmen M.'s continued drug use and suicidal ideation and Carmen H.'s

---

[1] Statutory references are to the Welfare and Institutions Code unless otherwise indicated.

inability to meet her daughter's needs, on the same date Carmen H. and the Department agreed to a voluntary family reunification plan that included Carmen M.'s placement at the David & Margaret Home for girls.

Carmen M. left the group home without permission on August 8, 2005, returning two days later under the influence of drugs. After that incident, however, Carmen M.'s behavior improved dramatically. Carmen M. was placed in the home's drug abuse recovery program (Turner Cottage), which included random drug testing. Carmen M. had no positive drug tests while in Turner Cottage and no serious behavior problems. Indeed, the group home's progress report for the period from October 2005 to January 2006 states Carmen M. performed at the "gold" level in the home's point system, did well in school, held a job and served as a positive role model for her peers.

### 2. The Section 300 Petition and the Combined Jurisdiction-disposition Hearing

After six months of voluntary services—the period specified by section 301—Carmen H. advised the Department she was incapable of properly caring for Carmen M., specifically with regard to her drug abuse problem. For her part, Carmen M. refused to go home, explaining, "I feel that if I go home now, that I will fall back to my old ways and will lose everything I have worked hard for. I would like to continue with school and continue to stay away from drugs." On January 6, 2006, the Department filed a petition to declare Carmen M. a dependent child of the court under section 300, subdivisions (a) (serious physical harm) and (b) (failure to protect),[2] based on the incident of physical abuse disclosed during the Department's original investigation of the family in April 2005 and the fact that voluntary services provided by the Department had been ineffective in resolving the family's problems.

At the detention hearing on January 6, 2006, the juvenile court found a prima facie case for detaining Carmen M. had been established and vested temporary placement and custody of Carmen M. with the Department pending disposition or further order of the court. The court ordered family reunification services for Carmen H. and allowed unmonitored visitation including overnight and weekend visits.

---

[2] The petition also included an allegation under section 300, subdivision (d) (sexual abuse), based on Carmen H.'s report to the Department during its initial investigation that Carmen M. had been sexually abused by a neighbor and her acknowledgement that she had not thereafter obtained any counseling services for her daughter.

The juvenile court held a combined jurisdiction and disposition hearing on January 30, 2006. The court sustained the petition and found Carmen M. is an individual described by section 300, subdivisions (a) and (b).[3] The court further found by clear and convincing evidence that substantial danger exists to the physical health of Carmen M. and/or that she is suffering severe emotional damage in the home of her mother and that there is no reasonable means to protect Carmen M. without removal from her mother's physical custody. (§ 361, subd. (b).) Accordingly, the court ordered Carmen M. suitably placed. Carmen H. waived family reunification services (§ 361.5, subd. (b)(14)); and the court denied reunification services to Carmen M.'s alleged father pursuant to section 361.5, subdivision (a). Because the court found that Carmen M. is not adoptable and there is no one willing to be her legal guardian, the court did not set a permanency planning hearing under section 366.26 and instead immediately ordered as Carmen M.'s permanent plan a "planned permanent living arrangement with the David & Margaret Home for girls [with] a specific goal of emancipation." The court set July 31, 2006, as the likely date by which Carmen M. will achieve her specific goal.

### 3. *The March 13, 2006 Progress Hearing and the Drug-testing Order*

At the disposition hearing the juvenile court ordered a case management meeting be held within 30 days to discuss Carmen M.'s placement, education, services and activities. A further court hearing was scheduled for March 13, 2006, to assess Carmen M.'s progress. The six-month hearing to review Carmen M.'s permanent plan (§ 366.3) was scheduled for July 31, 2006.

The case management meeting concerning Carmen M. was held on February 15, 2006. Carmen M. became upset when her behavior was addressed during the meeting and left the room. However, her attorney remained and continued to advocate on her behalf. At the meeting the Department's social worker, Carmen M.'s residential life therapist and Carmen H. all agreed it would benefit Carmen M. to continue to undergo random drug tests to help her remain drug free. Carmen M.'s attorney disagreed as to the need for mandated drug tests.

In connection with the progress hearing on March 13, 2006, the court received a March 10, 2006, letter from Carmen M.'s case manager at the David & Margaret Home, which noted that Carmen M. had no positive drug screens while in the Turner Cottage recovery program. The letter also reported that Carmen M. "has since moved on to Tarr Cottage, the emancipation program." Nonetheless, the case manager stated that "Carmen's recovery

---

[3] The count alleging Carmen M. was an individual described under section 300, subdivision (d), was dismissed in the interest of justice.

is ongoing and will be something Carmen will have to continually work at. It is my opinion that it would be beneficial at this time for Carmen to submit to random drug screening on a regular basis. Random drug screening will assist Carmen in remaining committed and honest with her on going recovery." Additional information submitted for the progress hearing indicated Carmen M. was attending individual counseling once a week, group therapy four times a week and an Alcoholics Anonymous/Narcotics Anonymous meeting once a week and had completed an independent living course at Citrus College. In its interim review report the Department also recommended that the court order Carmen M. to submit to random drug tests "to ensure and assist in a successful drug recovery."

At the March 13, 2006 hearing itself, in response to the court's request for comments on Carmen M.'s progress, her counsel stated, "I am opposed to the drug testing. I could argue, if the court's inclined, but I would just note that there's no statutory authority." The court replied, "I'd like her to test for the next 60 days just so that I can see she is clean and sober because if she relapses, even though I can't make her test, it's just going to ruin her total life." Accordingly, the court ordered Carmen M. to submit to an "on-demand test if they [the staff at the group home] have reason to believe that she's under the influence. So long as you appear clean and sober, they're not going to test you. If it appears you're impaired, I'm going to give them permission to test you, okay?" (The court's minute order for March 13, 2006, states, "Minor to test on demand if requeste[d].")

Counsel for Carmen M. objected on the record and asked the court to explain the legal basis for the order. The court indicated it believed it had the authority to enter the order to protect Carmen M.'s recovery and invited counsel to file a writ petition to challenge the order if she believed that was appropriate. Although Carmen M.'s counsel asked to make a further record of her objections, the court said, "you already stated them," and terminated the hearing. (The court, however, indicated counsel could remain until the end of the court's calendar to pursue the matter, something that apparently was not possible because the attorney had a conflicting engagement.)

Carmen M. filed a petition for writ of mandate, prohibition or other appropriate relief on March 21, 2006, requesting that we issue a peremptory writ of mandate directing the juvenile court to vacate its order of March 13, 2006, requiring Carmen M. to submit to on-demand drug testing and also requesting an immediate stay of the March 13, 2006 order. On April 6, 2006, we issued an order to show cause why the requested relief should not be granted and stayed the order that Carmen M. submit to drug testing.

## CONTENTIONS

Carmen M. contends the juvenile court lacked statutory authority to order her to submit to drug testing if the staff at the group home where she resides believes she is under the influence of drugs; even if authorized, the drug-testing order violates her fundamental right to privacy protected by the California Constitution; and the juvenile court violated her due process rights by curtailing her counsel's attempt to make a complete record of her objections to the order.

## DISCUSSION

### 1. *The Juvenile Court Is Authorized to Order Drug Testing if Reasonably Related to Protecting a Dependent Child's Safety or Well-being*

■ When a child has been declared a dependent of the juvenile court, the court is expressly authorized to make "any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child, including medical treatment . . . ." (§ 362, subd. (a).) In addition, if it is necessary to remove a child from the custody of his or her parent or guardian, the Legislature has directed the juvenile court to secure for the child "custody, care, and discipline as nearly as possible equivalent to that which should have been given by his or her parents." (§ 202, subd. (a).)[4] These general provisions have been broadly interpreted to authorize a wide variety of remedial orders intended to protect the safety and well-being of dependent children (see *In re Jose M.* (1988) 206 Cal.App.3d 1098, 1103–1104 [254 Cal.Rptr. 364] ["The juvenile court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accordance with this discretion. [Citations.] The court's determination in this regard will not be reversed absent a clear abuse of discretion."]) and would appear sufficiently comprehensive to include an order for continued drug testing of a dependent child who has admitted a substance abuse problem. (See generally *In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006 [57 Cal.Rptr.2d 861] [court did not abuse its discretion by ordering father to submit to drug or alcohol testing].) Indeed, it is difficult to conjure

---

[4] Section 202, subdivision (b), further provides, "Minors under the jurisdiction of the juvenile court who are in need of protective services shall receive care, treatment and guidance consistent with their best interest and the best interest of the public." (See also § 245.5 ["In addition to all other powers granted by law, the juvenile court may direct all such orders to the parent, parents, or guardian of a minor who is subject to any proceedings under this chapter as the court deems necessary and proper for the best interests of or for the rehabilitation of the minor. These orders may concern the care, supervision, custody, conduct, maintenance, and support of the minor, including education and medical treatment."].)

any reason why an order requiring a dependent child to attend weekly psychotherapy sessions would be authorized by these provisions—a fairly standard order notwithstanding its potential for intrusion into the child's private thoughts and feelings (see, e.g., *Melinda K. v. Superior Court* (2004) 116 Cal.App.4th 1147, 1151 [11 Cal.Rptr.3d 129] [dependent child ordered to participate in individual counseling to address sexual abuse and abandonment issues]; *In re S. H.* (2003) 111 Cal.App.4th 310, 316 [3 Cal.Rptr.3d 465] [discussing court-ordered individual therapy for the children])—and an order to drug test would not. Certainly safeguarding a dependent child's physical health is no less significant a concern for the juvenile court than protecting his or her mental health.

Implicitly acknowledging the broad-ranging authority of the juvenile court under section 362, subdivision (a), to enter orders in the best interest of dependent children, including specifically orders necessary to address issues of health, Carmen M.'s challenge to the statutory basis for the court's drug-testing order is not directed to that provision at all, but rather focuses on section 359 and what Carmen M. insists that section fails to provide. Section 359 authorizes the juvenile court to order a minor who appears to be a danger to himself or herself or to others as a result of the use of narcotics or a restricted dangerous drug to be taken to a facility for 72-hour treatment and evaluation. (§ 359, 1st par.)[5] If it is concluded that (a) the minor is not a danger to himself or herself or to others as a result of the use of drugs, (b) the minor does not require 14-day intensive treatment, or (c) the minor has been certified for not more than 14 days of intensive treatment and the certification is terminated, then "the minor shall be released if the juvenile court proceedings have been dismissed; referred for further care and treatment on a voluntary basis, subject to the disposition of the juvenile court proceedings; or returned to the juvenile court, in which event the court shall proceed with the case pursuant to this chapter." (§ 359, 2d par.)[6]

---

[5] Section 359, first paragraph, provides, "Whenever a minor who appears to be a danger to himself or others as a result of the use of narcotics (as defined in Section 11001 of the Health and Safety Code), or a restricted dangerous drug (as defined in Section 11901 of the Health and Safety Code), is brought before any judge of the juvenile court, the judge may continue the hearing and proceed pursuant to this section. The court may order the minor taken to a facility designated by the county and approved by the State Department of Mental Health as a facility for 72-hour treatment and evaluation. Thereupon the provisions of Section 11922 of the Health and Safety Code shall apply, except that the professional person in charge of the facility shall make a written report to the court concerning the results of the evaluation of the minor."

[6] Section 359, second paragraph, provides, "If the professional person in charge of the facility for 72-hour evaluation and treatment reports to the juvenile court that the minor is not a danger to himself or others as a result of the use of narcotics or restricted dangerous drugs or that the minor does not require 14-day intensive treatment, or if the minor has been certified for not more than 14 days of intensive treatment and the certification is terminated, the minor shall be released if the juvenile court proceedings have been dismissed; referred for further

■ Carmen M. quite properly asserts section 359 itself does not support the juvenile court's drug testing order. There was no evidence and no finding Carmen M. is currently a danger to herself or others as a result of drug use. (In fact, the record supports the conclusion Carmen M. is no longer using drugs at all.) However, Carmen M.'s further argument that the reference in section 359 to "further care and treatment on a *voluntary* basis" (italics added) demonstrates the Legislature's intent to preclude the juvenile court from ordering a dependent child to submit to drug treatment or drug testing other than as specifically described in the statute is simply incorrect. At the conclusion of the evaluation and treatment period prescribed by section 359, whether or not a referral for further, voluntary treatment has been made, the dependent child is returned to the juvenile court (unless the dependency proceedings have been dismissed), which is then directed to "proceed with the case pursuant to this chapter." Thus, whether or not a child has been evaluated under section 359, the juvenile court at disposition and thereafter retains its authority—and its responsibility—under section 362, subdivision (a), to make all orders reasonably necessary for the care of the child.

Carmen M. also notes that section 729.3, which specifically authorizes the juvenile court to order certain children within its jurisdiction under the delinquency statutes (by virtue of a petition filed under § 601 or § 602) to submit as a condition of probation to alcohol and drug testing at the request of a peace officer or probation officer, has no counterpart in the dependency provisions of the Welfare & Institutions Code.[7] In addition, section 729.10 mandates that the juvenile court require completion of an alcohol or drug education program if the offense upon which a wardship determination was based involved the unlawful possession, use or sale of a controlled substance. Carmen M. argues the lack of parallel provisions in the dependency statutes demonstrates the Legislature's intent to limit mandatory drug testing to delinquency cases.

Carmen M.'s position with respect to the Legislature's purportedly different treatment of drug testing and drug treatment under the dependency and delinquency laws suffers from several flaws. Initially, that the Legislature

---

care and treatment on a voluntary basis, subject to the disposition of the juvenile court proceedings; or returned to the juvenile court, in which event the court shall proceed with the case pursuant to this chapter."

[7] Section 729.3 provides, "If a minor is found to be a person described in Section 601 or 602 and the court does not remove the minor from the physical custody of his or her parent or guardian, the court, as a condition of probation, may require the minor to submit to urine testing upon the request of a peace officer or probation officer for the purpose of determining the presence of alcohol or drugs."

*required* the juvenile court to order participation in and completion of a drug education program for all minors who committed crimes involving the unlawful use or sale of controlled substances provides no guidance as to the court's *discretion* in either dependency or delinquency cases to order drug testing when it determines such testing will protect or promote the safety or well-being of a child properly within its jurisdiction.

In addition, although we need not determine whether the juvenile court would be permitted to impose the specific drug-testing condition of probation described in section 729.3 in the absence of express statutory authority,[8] that provision is distinguishable from the court order at issue in the case at bar in two fundamental respects. First, section 729.3 applies only when a child has been found to be a person described in section 601 or 602 "and the court does not remove the minor from the physical custody of his or her parent or guardian." That is, in situations in which the court has *not* ordered the care, custody and control of the child to be under the supervision of a probation officer for placement in the home of a relative or nonrelative extended family member, community care facility or more restrictive camp or detention setting, the juvenile court is nonetheless authorized to condition the child's continued residence with his or her parents on drug testing. In the case at bar, in contrast, Carmen M. has been removed from the custody of her mother for placement by the Department; and the Department and the group home where she resides both endorse continued drug testing.

Second, requiring a child under the jurisdiction of the juvenile court to submit to drug or alcohol testing at the request of a police officer or probation officer, with the attendant risk of additional delinquency court or penal consequences for a failed test, is far different from court-ordered drug testing as part of an ongoing drug abuse treatment program. (See, e.g., *In re Kacy S.* (1998) 68 Cal.App.4th 704, 710 [80 Cal.Rptr.2d 432] [drug testing condition of probation under § 729.3 "is designed to detect the presence of substances whose use by minors *is unlawful*. . . . Because the testing condition relates to criminal conduct and is reasonably related to future criminality, its imposition is within the juvenile court's discretion . . ."].) The Legislature's express authorization for law-enforcement-initiated drug testing

---

[8] Section 727, subdivision (a), the delinquency analogue to section 362, subdivision (a), provides, "When a minor is adjudged a ward of the court on the ground that he or she is a person described by Section 601 or 602 the court may make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the minor, including medical treatment, subject to further order of the court."

as part of an early intervention anticrime program[9] does not indicate its view as to the propriety of a therapeutic drug-testing requirement or otherwise serve to diminish the juvenile court's broad statutory authority to make all orders reasonably needed to protect the health and safety of dependent children within its jurisdiction. (See *Manduley v. Superior Court* (2002) 27 Cal.4th 537, 563 [117 Cal.Rptr.2d 168, 41 P.3d 3] [court properly seeks to harmonize general and specific statutes on similar subjects to effectuate the purposes of both provisions]; *Garcia v. McCutchen* (1997) 16 Cal.4th 469, 478 [66 Cal.Rptr.2d 319, 940 P.2d 906] ["If we can reasonably harmonize '[t]wo statutes dealing with the same subject,' then we must give 'concurrent effect' to both, 'even though one is specific and the other general. [Citations.]' "].)

### 2. *Properly Limited Court-ordered Drug Testing Does Not Violate a Dependent Child's Fundamental Right of Privacy*

#### *Drug testing and a minor's constitutional right to privacy*

■ Without question, court-ordered drug testing of dependent children implicates those individuals' right to privacy, protected by article I, section 1 of the California Constitution.[10] (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 40 [26 Cal.Rptr.2d 834, 865 P.2d 633] (*Hill*) ["Plaintiffs correctly assert that the NCAA's drug testing program impacts legally protected privacy interests."]; *Loder v. City of Glendale* (1997) 14 Cal.4th 846, 896 [59 Cal.Rptr.2d 696, 927 P.2d 1200] [city's requirement that all job applicants submit to urinalysis drug testing as part of a preemployment medical examination "unquestionably implicates privacy interests protected by the state Constitution."]; see *American Academy of Pediatrics v. Lungren, supra,* 16 Cal.4th at p. 334 (*Academy of Pediatrics*) ["[T]here can be no question but that minors, as well as adults, possess a constitutional right of privacy under the California Constitution."]; see also *Board of Ed. of Independent School Dist. No. 92 of Pottawatomie Cty. v. Earls* (2002) 536 U.S. 822, 830 [153 L.Ed.2d 735, 122 S.Ct. 2559] [public school district's drug-testing requirement for all students participating in extracurricular activities does not violate Fourth Amendment's prohibition against unreasonable searches and seizures or impermissibly invade students' federal

---

[9] Section 729.3 was one part of a program "designed to reach our children before they become habitual criminals, and requires the intervention by the juvenile justice system at the earliest signs of drug abuse, gang affiliation, and other antisocial behavior." (Stats. 1989, ch. 1117, § 1, subd. (b), p. 4113.)

[10] Article I, section 1 of the California Constitution provides, "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." This explicit reference to the right of privacy was added by initiative measure to the California Constitution in November 1972. (See *American Academy of Pediatrics v. Lungren* (1997) 16 Cal.4th 307, 326 [66 Cal.Rptr.2d 210, 940 P.2d 797].)

constitutional right to privacy];[11] *Vernonia School Dist. 47J v. Acton* (1995) 515 U.S. 646, 652–653 [132 L.Ed.2d 564, 115 S.Ct. 2386] [suspicionless drug testing of public school athletes does not violate federal Constitution].)

■ In *Hill, supra,* 7 Cal.4th 1, the Supreme Court considered a challenge under the state constitutional right to privacy to the National Collegiate Athletic Association's (NCAA) drug-testing program for student athletes engaged in NCAA-sanctioned intercollegiate competition.[12] The NCAA's program, which involved observation of urination and disclosure of medical information, implicated both "autonomy privacy—an interest in freedom from observation in performing a function recognized by social norms as private," and "informational privacy—an interest in limiting disclosure of confidential information about bodily condition." (*Id.* at pp. 40–41.) Nonetheless, the court rejected the proposition "that every assertion of a privacy interest under article I, section 1, must be overcome by a 'compelling interest' " and explained, "The particular context, i.e., the specific kind of privacy interest involved and the nature and seriousness of the invasion and any countervailing interests, remains the critical factor in the analysis. Where the case involves an obvious invasion of an interest fundamental to personal autonomy, e.g., freedom from involuntary sterilization or the freedom to pursue consensual familial relationships, a 'compelling interest' must be present to overcome the vital privacy interest. If, in contrast, the privacy interest is less central or in bona fide dispute, general balancing tests are employed." (*Id.* at pp. 34–35.) With respect to the privacy interests implicated by the drug testing program at issue in *Hill,* the Supreme Court determined that a general balancing test, rather than a compelling interest test, was applicable. (*Id.* at pp. 43–44, 53–54.) Similarly, the preemployment urinalysis drug testing at issue in *Loder v. City of Glendale, supra,* 14 Cal.4th at pages 896–898, was analyzed under a general balancing standard. In marked contrast, in *Academy of Pediatrics, supra,* 16 Cal.4th at pages 329–330, which involved a constitutional challenge to legislation requiring either

---

[11] The United States Constitution is less protective of privacy than the California Constitution. (*Academy of Pediatrics, supra,* 16 Cal.4th at p. 326 ["[N]ot only is the state constitutional right of privacy embodied in explicit constitutional language not present in the federal Constitution, but past California cases establish that, in many contexts, the scope and application of the state constitutional right of privacy is broader and more protective of privacy than the federal constitutional right of privacy as interpreted by the federal courts."].) Carmen M. does not assert the drug-testing order violates her federal constitutional right of privacy.

[12] The threshold issue decided in *Hill, supra,* 7 Cal.4th at pages 15–20, was that the right to privacy guaranteed by the California Constitution protects an individual's privacy from infringement or invasion by nongovernmental persons or entities such as the NCAA. (*Id.* at p. 20 ["[T]he Privacy Initiative in article I, section 1 of the California Constitution creates a right of action against private as well as government entities."].)

parental consent or judicial authorization before a pregnant minor could obtain an abortion, the court held the statute was subject to scrutiny under the "compelling interest" standard because it intruded upon " 'an interest fundamental to personal autonomy.' "

■ Under the general balancing approach utilized in *Hill, supra,* 7 Cal.4th 1, and *Loder v. City of Glendale, supra,* 14 Cal.4th 846, the identification of the legally recognized privacy interests at stake "is the beginning, not the end, of the analysis." (*Hill,* at p. 41; see *Loder,* at pp. 894–895.) The court must weigh the justification for the conduct in question against the intrusion on privacy resulting from the conduct in any case that raises, as does the matter at bar, a genuine, nontrivial invasion of a protected privacy interest.[13] Central to that evaluation is a recognition of the context in which the allegedly invasive conduct occurs. (See *Hill,* at p. 41 [student athletes' reasonable expectations of privacy "must be viewed within the context of intercollegiate athletic activity and the normal conditions under which it is undertaken"]; see also *Vernonia School Dist. 47J v. Acton, supra,* 515 U.S. at p. 665 ["The most significant element in this case is the first we discussed: that the Policy was undertaken in furtherance of the government's responsibilities, under a public school system, as guardian and tutor of children entrusted to its care."]; *Board of Ed. of Independent School Dist. No. 92 of Pottawatomie Cty. v. Earls, supra,* 536 U.S. at p. 830 ["the context of the public school environment serves as the backdrop for the analysis of the privacy interest at stake and the reasonableness of the drug testing policy in general"].)

■ Carmen M.'s status as both a minor and a dependent child of the juvenile court is fundamental to our determination whether court-ordered drug testing violates her right to privacy. Although Carmen M., like all minors, enjoys a right of privacy protected by the California Constitution, the scope and application of that constitutional right differs significantly from the rights enjoyed by adults. (*Academy of Pediatrics, supra,* 16 Cal.4th at p. 335;

---

[13] The Supreme Court in *Hill, supra,* 7 Cal.4th at pages 35–37, identified three elements of a cause of action for violation of the state constitutional right of privacy: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy on the part of the plaintiff; and (3) a serious invasion of the plaintiff's privacy interest by the defendant. As explained in *Academy of Pediatrics, supra,* 16 Cal.4th at page 331, quoting from Chief Justice George's lead opinion in *Loder v. City of Glendale, supra,* 14 Cal.4th at pages 893–894, these three elements are simply " ' "threshold elements" . . . to screen out claims that do not involve a significant intrusion on a privacy interest protected by the state constitutional privacy provision.' " " '[T]he court in *Hill* determined that it was appropriate to articulate several threshold elements that may permit courts to weed out claims that involve so insignificant or de minimis an intrusion on a constitutionally protected privacy interest as not even to require an explanation or justification by the defendant.' " (*Academy of Pediatrics,* at p. 331.)

cf. *Planned Parenthood of Missouri v. Danforth* (1976) 428 U.S. 52, 102 [49 L.Ed.2d 788, 96 S.Ct. 2831] ["The State's interest in protecting a young person from harm justifies the imposition of restraints on his or her freedom even though comparable restraints on adults would be constitutionally impermissible."].) Thus, in most instances a parent has the legal right to act on behalf of his or her child, including authorizing a medical procedure or test, to protect the child's health and well-being:[14] "As a general matter, parents during a child's minority have the legal right (and obligation) to act on behalf of their child to protect their child's rights and interests, and in most instances this general rule would apply to interests of the minor that are protected by the state constitutional right of privacy as well as to other rights and interests of the minor. Thus, for example, although past cases have established that the state constitutional right of privacy generally guarantees an individual's right to consent to, or refuse to consent to, medical treatment or medication [citations], we believe it is clear that, at least with respect to most medical treatment relating to a minor, the Legislature may grant a parent the authority to make medical decisions on behalf of his or her child. No one reasonably could suggest that a serious state constitutional privacy question would be presented, for example, whenever a parent, over a child's objection, requires the child to go to the dentist or to take his or her medicine." (*Academy of Pediatrics,* at pp. 335–336.)

Because Carmen M. has been removed from the custody of her mother[15] and is a dependent child under the protection of the juvenile court, it is the continued responsibility of that court to provide for her welfare. (See *In re Sade C.* (1996) 13 Cal.4th 952, 989 [55 Cal.Rptr.2d 771, 920 P.2d 716] ["The state has a '*parens patriae* interest in preserving and promoting the welfare of the [dependent] child . . . .' "]; *In re Chantal S.* (1996) 13 Cal.4th 196, 201 [51 Cal.Rptr.2d 866, 913 P.2d 1075] ["The juvenile court has a special responsibility to the child as *parens patriae* and must look to the totality of a child's

---

[14] In *In re Scott K.* (1979) 24 Cal.3d 395, 403–404 [155 Cal.Rptr. 671, 595 P.2d 105], the Supreme Court held a parent may not summarily waive his or her child's constitutional right to be secure from an unreasonable search and seizure by law enforcement officers. The court's analysis, however, was grounded on the principle—more fully developed in *Academy of Pediatrics, supra,* 16 Cal.4th at pages 335–336—that a parent who is responsible for his or her minor children may inspect their property without infringing any right to privacy or search and seizure protections. (*Scott K.,* at p. 403.) The distinction between a parent or guardian conducting the search himself or herself and purporting to consent on behalf of the child to a search by police officers is functionally identical to the distinction, discussed above, between the dependency court, acting in place of a parent from whom legal custody of the child has been removed, approving drug testing as part of an ongoing recovery program and the probation condition authorized by section 729.3, which requires the child to submit to drug testing by law enforcement officials.

[15] Although not legally controlling, it is noteworthy that Carmen H., Carmen M.'s mother, asked the court to continue the drug testing of her daughter at the group home.

circumstances when making decisions regarding the child."].) The juvenile court thus assumes the parent's role, as well as the parent's authority to limit the child's freedom of action. (§ 202 [when minor is removed from his or her own family, it is the purpose of the dependency law "to secure for the minor custody, care, and discipline as nearly as possible equivalent to that which should have been given by his or her parents"]; see *In re Eric J.* (1970) 25 Cal.3d 522, 530 [159 Cal.Rptr. 317, 601 P.2d 549] [under § 202 the state assumes the parents' role and the parents' authority to limit the minor's freedom of action]; *In re Rosalinda C.* (1993) 16 Cal.App.4th 273, 279 [20 Cal.Rptr.2d 58] ["A juvenile court has a continuing responsibility to account for the welfare of a dependent child under its jurisdiction, wherever placed, unless and until a permanent and stable home is established. In the absence of an adoption or legal guardianship, continued supervision is necessary . . . ."].)

The justification for the drug-testing order at issue in this case, of course, does not rest solely on the juvenile court's general responsibility for the health and well-being of dependent children within its jurisdiction. Unlike the situation in *In re Kacy S., supra,* 68 Cal.App.4th at page 710, in which random testing had been authorized even though alcohol and drugs were not implicated in the minors' offenses or social histories, there is no dispute Carmen M. had a recent history of drug abuse, she apparently responded well to a drug treatment and education program that included drug testing and continued testing will be a constructive tool for her continued sobriety. Moreover, as ultimately crafted, the juvenile court's order did not authorize random testing of Carmen M. Rather, the narrowly tailored order requires Carmen M. to submit to a drug test only if the staff of the group home believes she is under the influence of drugs.

■ In view of the specific and documented justification for the order for continued drug testing and the express condition that testing occur only if there is a reasonable suspicion Carmen M. has been using drugs, we are persuaded the juvenile court's legitimate interest in closely monitoring Carmen M.'s recovery fully supports the order's limited intrusion on Carmen M.'s right to privacy.

### 3. *Orders for Drug Testing Dependent Children Should Include Procedural Safeguards for Administering the Test and Disclosing Test Results*

Potentially more troubling than the threshold question of the constitutionality of court-ordered drug testing of dependent children with a recent history of substance abuse is the absence of any express limitations or guidelines in

the court order as to the type of test to be conducted (for example, blood or urine), the manner of administering the test or the scope of disclosure of test results. (See, e.g., *Wainwright v. Superior Court* (2000) 84 Cal.App.4th 262, 266–268 [100 Cal.Rptr.2d 749] [declining to interpret Fam. Code, § 3011, subd. (d), which requires independent corroboration before a court may consider allegations of a parent's drug or alcohol abuse in a child custody dispute, to permit court-compelled drug testing; absence of substantive or procedural guidelines for court-ordered drug testing presents serious constitutional concerns].) The use of highly invasive procedures that unnecessarily disregard the child's privacy interests when less intrusive alternatives are feasible weighs heavily in any state constitutional privacy case. (See *Hill, supra,* 7 Cal.4th at pp. 39–40, 43 [noting heightened intrusiveness of collection of urine samples under direct observation of monitor compared to unobserved urination in restroom stall with monitor nearby]; cf. *Board of Ed. of Independent School Dist. No. 92 of Pottawatomie Cty. v. Earls, supra,* 536 U.S. at p. 832 [degree of intrusion on one's privacy caused by collecting urine sample depends on monitoring process]; *Vernonia School Dist. 47J v. Acton, supra,* 515 U.S. at p. 658 [same]; see generally *Wainwright,* at p. 268 & fn. 3.)[16]

Because Carmen M. was previously tested as part of the drug abuse recovery program at Turner Cottage of the David & Margaret Home, implicit in the court's order for continued testing at the group home is the requirement that the new testing be conducted in the same manner and with the same protections for her privacy as before. Indeed, Carmen M. has not challenged this aspect of the court's order—that is, the procedures to be used either for the testing itself or for safeguarding the confidentiality of the results. (See generally *Hill, supra,* 7 Cal.4th at p. 38 ["Confronted with a defense based on countervailing interests, the plaintiff may undertake the burden of demonstrating the availability and use of protective measures, safeguards, and alternatives to the defendant's conduct that would minimize the intrusion on privacy

---

[16] Family Code section 3041.5, adopted in 2004 in response to the decision of the Court of Appeal in *Wainwright v. Superior Court, supra,* 84 Cal.App.4th 262, expressly authorizes drug or alcohol testing of any parent who is seeking custody of, or visitation with, a child if there has been a judicial determination (based on a preponderance of evidence) that there is habitual, frequent or continual illegal use of controlled substances or abuse of alcohol by the parent. The section mandates that the court order "the least intrusive method of testing" and that substance abuse testing "shall be performed in conformance with procedures and standards established by the United States Department of Health and Human Services for drug testing of federal employees." (See generally *Deborah M. v. Superior Court* (2005) 128 Cal.App.4th 1181, 1189–1191 [27 Cal.Rptr.3d 757] [discussing legislative history of Fam. Code, § 3041.5].)

interests."].)[17] Accordingly, we have no occasion in this case to consider the full range of procedural protections that may be required to uphold drug testing of dependent children as part of either court-ordered treatment for substance abuse or an aftercare program intended to assist the child sustain sobriety. Nonetheless, in general any such order should provide for the least intrusive, reliable method of testing and shield test results and other sensitive personal information from unnecessary disclosure, consistent with the purpose for which testing has been ordered. (See generally § 827 [mandating confidentiality for juvenile court case files].)

### 4. *The Juvenile Court's Limitation on Counsel's Argument Did Not Violate Carmen M.'s Due Process Rights*

In her final challenge to the drug-testing order Carmen M. argues the juvenile court violated her due process rights by curtailing her counsel's attempt to make a complete record of her objections to the order. Fairly read, however, the record reveals Carmen M.'s counsel had asked for priority on the court's calendar and, when the matter was called, clearly (and repeatedly) objected to the continued drug testing of her client and emphatically stated her position the court lacked any statutory authority to order continued testing. (That objection was also described in the Department's report submitted in connection with the hearing.) At this point, counsel was told, if she wanted to make a further record of her objections, she would have to remain until the end of the calendar—an invitation that was apparently impossible to accept because of a conflicting engagement. When Carmen M.'s counsel nonetheless attempted to continue to argue the matter, the court terminated the hearing.

▮▮▮▮ Although Carmen M. indisputably had a due process right to notice and an opportunity to be heard on the question of court-ordered drug testing (see generally *In re Malinda S.* (1990) 51 Cal.3d 368, 382 [272 Cal.Rptr. 787, 795 P.2d 1244]; *In re Wilford J.* (2005) 131 Cal.App.4th 742 [32 Cal.Rptr.3d 317]), the juvenile court retains discretion to exercise reasonable control over its own proceedings, including the extent of oral argument it will allow. (See *In re Nada R.* (2001) 89 Cal.App.4th 1166, 1176 [108 Cal.Rptr.2d 493].) The court's determination to conclude the hearing when it did was not an abuse of that discretion. (See *ibid.*)

---

[17] Significantly, in upholding drug testing for all public school students participating in extracurricular activities, the United States Supreme Court in *Board of Ed. of Independent School Dist. No. 92 of Pottawatomie Cty. v. Earls, supra,* 536 U.S. at page 833, emphasized that test results are not turned over to any law enforcement authority and do not lead to the imposition of discipline or have any adverse academic consequences. "[T]he only consequence of a failed drug test is to limit the student's privilege of participating in extracurricular activities." (*Ibid.*)

## DISPOSITION

The petition for writ of mandate is denied. Pursuant to California Rules of Court, rule 24(b)(3) this decision is final on filing. However, the stay of the juvenile court's order that Carmen M. submit to drug testing, issued on April 6, 2006, will remain in effect for 20 days to permit Carmen M. to seek relief in the Supreme Court.

Johnson, J., and Zelon, J., concurred.