64 Cal.Rptr.3d 819 (2007)
154 Cal.App.4th 427
In re CORRINE W., a Person Coming Under the Juvenile Court Law.
Contra Costa County Bureau of Children and Family Services, Plaintiff and Respondent,
v.
Y.C., Defendant,
Corrine W., Movant and Appellant.
No. A115584.
Court of Appeal of California, First District, Division Four.
August 22, 2007.
Courtney Phleger, for Appellant.
Silva no B. Marchesi, County Counsel, Steven P. Rettig, Deputy County Counsel, for Respondent.
SEPULVEDA, J.
The minor appeals the juvenile court's order denying her motion to compel respondent Contra Costa County Bureau of *820 Children and Family Services (Bureau) to pay for automobile liability insurance so that she may lawfully drive a car. She argues that federal and state law require that such payments be made to her foster parents. We disagree and affirm.

I.

Factual and Procedural

Background
Corrine W. was removed from her home at the age of 16 after she reported that her mother's boyfriend had been molesting the minor since she was 5 years old. Following a contested jurisdiction hearing, the juvenile court sustained a petition filed pursuant to Welfare and Institutions Code section 300,[1] finding that the minor was a child described by subdivisions b (failure to protect) and d (sexual abuse) of the statute. The minor was eventually placed in foster care with a family friend, after having first been placed in a group home. Corrine's mother waived reunification services at the initial disposition hearing, and the juvenile court adopted the Bureau's recommendation that the minor be placed in long-term foster care. The minor's parents are not parties to this appeal, and no party challenges the juvenile court's orders with respect to the minor's status as a dependent of the court.
The minor filed a motion to compel support services on August 11, 2006. Specifically, she requested that the county pay for the cost of automobile liability insurance so that she could legally drive a car. (Veh.Code, §§ 16020, 16054 [all motor vehicle drivers must show proof of financial responsibility].) In its order denying the motion, the juvenile court cited section 202, subdivision (a), which provides that "it is the purpose of this chapter to secure for the minor custody, care, and discipline as nearly as possible equivalent to that which should have been given by his or her parents." Reasoning that parents often cannot afford insurance or require their children to pay for their own insurance, the court reasoned that "the care and custody of a minor does not require funding of car insurance. Public funds are intended to provide the minor with the necessities. Driving an automobile at age sixteen is not a necessity." (Underlining original.) The minor timely appealed.[2] (§ 395 [orders after judgment may be appealed]; In re Daniel K. (1998) 61 Cal.App.4th 661, 666-667, 71 Cal.Rptr.2d 764 [order entered at dispositional hearing is a final judgment].)

II.

Discussion
The minor argues that the juvenile court erred in denying her motion to compel *821 the Bureau to pay for automobile liability coverage, because federal and state law mandate that the county pay for such insurance. The interpretation of the relevant statutes presents a question of law we review de novo.[3](In re Clarissa H. (2003) 105 Cal.App.4th 120, 125, 129 Cal.Rptr.2d 223.)
Section 11460, subdivision (a) provides that foster care providers shall be paid a per child, per month rate in return for the care and supervision of children placed with them. Subdivision (b) of the section provides that "`[c]are and supervision'" includes, among other things, "liability insurance with respect to a child." This is consistent with the federal Aid to Families with Dependent Children Foster Care Program, which requires states to pay for (again, among other things) "liability insurance with respect to a child" in order to receive federal funds to assist with the cost of foster care for dependent children. (42 U.S.C. §§ 675(4)(a), 671(a)(1); State of Cal. Dept. of Social Servs. v. Thompson (9th Cir.2003) 321 F.3d 835, 839.) The minor argues that the term "liability insurance with respect to a child" includes automobile liability insurance. We disagree.
As the minor acknowledges, the statutes that require payments for "liability insurance with respect to a child" do not define that term. (42 U.S.C. § 675(4)(a); § 11460, subd. (b).) Corrine directs us to the definition of liability insurance found in the Insurance Code, which states that liability insurance includes "[insurance against loss resulting from liability for injury, fatal or nonfatal, suffered by any natural person, or resulting from liability for damage to property, or property interests of others but does not include [types of insurance not relevant here]." (Ins. Code, § 108, subd. (a).) But what the minor does not mention is that automobile insurance is defined separately in the Insurance Code. (Ins.Code, § 100, subds. (8) & (16) [liability and automobile are two separate classes of insurance], 116, subd. (a) [automobile insurance includes insurance of automobile users against hazards incident to use of automobile].)[4] Because liability insurance is included in the list of items that must be covered in payments to foster parents, we must infer that the listing of terms is complete and does not also include automobile insurance. (In re Christopher T. (1998) 60 Cal.App.4th 1282, 1290, 71 Cal.Rptr.2d 116 [explaining doctrine *822 of expressio unius est exclusio alterius].)
While it may be generally true that automobile insurance is considered a type of liability insurance, we may not infer from a general reference to "liability insurance" an intent to specifically cover automobile liability insurance. This is illustrated by Vehicle Code section 16450, which provides that a "`motor vehicle liability policy'" is "an owner's policy or an operator's policy, or both, of liability insurance." (Italics added.) In other words, a motor vehicle policy is a type of liability insurance specifically tailored for the owner or operator of a motor vehicle, but it does not follow that the general term "liability insurance" necessarily includes automobile insurance. Because the statutes upon which the minor relies do not specifically refer to automobile insurance in the list of items that must be covered by payments to foster parents, we reject the minor's argument that the Bureau is automatically required to pay for such insurance.
Although it is true that Insurance Code section 108, subdivision (b) classifies coverage of disability or funeral expenses that may be included in automobile insurance policies as "liability insurance," it does not specifically define automobile liability insurance as a "form of liability insurance," as appellant suggests. And while Insurance Code section 108, subdivision (c) classifies uninsured motorist coverage as liability insurance (State Farm Mutual Automobile Ins. Co. v. Progressive Marathon Ins. Co. (2007) 55 Cal. Rptr.3d 478, 148 Cal.App.4th Supp. 1, 7), it does not follow that liability insurance necessarily includes all types of automobile insurance.
The other cases relied on by the minor likewise do not support her position. In Home Indemnity Co. v. King (1983) 34 Cal.3d 803, 809-810, 195 Cal.Rptr. 686, 670 P.2d 340, an insurance company argued that a portion of the Insurance Code superseded Public Utilities Commission endorsement provisions that nullified a limitation in its common carrier liability insurance policy. The court disagreed, noting that common carrier liability insurance is distinguishable from other types of insurance covering vehicles (which were covered by the relevant Insurance Code provisions). (Id. at p. 811, 195 Cal.Rptr. 686, 670 P.2d 340.) In reaching its conclusion, the court stated: "Common carrier liability insurance is not encompassed within the general category of `liability insurance' that includes automobile liability insurance." (Ibid.) The passage was a reference to a specific article in the Insurance Code and was not, as the minor claims, a recognition "that the general term `liability insurance' encompasses automobile liability insurance." (Ibid. ["Common carrier liability insurance is therefore not encompassed within the general category of `liability insurance' covered by article 2"], italics added.)
Day v. City ofFontana (2001) 25 Cal.4th 268, 105 Cal.Rptr.2d 457, 19 P.3d 1196 likewise does not support the minor's position. In Day, the Supreme Court held that Civil Code section 3333.4 (section 3333.4) precludes an uninsured motorcyclist from recovering noneconomic damages against a county and a municipality in an action for nuisance and dangerous condition of public property following a vehicular accident. (Day v. City of Fontana at p. 271, 105 Cal.Rptr.2d 457, 19 P.3d 1196.) Appellant argued that because section 3333.4 states that an insurer shall not be liable for noneconomic losses "`under a policy of liability or uninsured motorist insurance,'" the statute applied only to a defendant's automobile insurer. (Day v. City of Fontana at p. 277, 105 Cal.Rptr.2d 457, 19 P.3d 1196.) In rejecting that argument, *823 the court stated: "Although a policy of liability insurance may be embraced within an automobile insurance policy [citation], liability insurance policies are often issued to cover the liability of nonmotorists and are not associated exclusively with automobile insurance. If anything, the fact that section 3333.4, subdivision (b) employs the term `liability' insurance, instead of a more qualified term such as `automobile' insurance or `automobile liability' insurance, undercuts the notion that the statute pertains solely to accidents between insured and uninsured motorists." (Day v. City of Fontana at p. 278, 105 Cal.Rptr.2d 457, 19 P.3d 1196.) We agree with the minor insofar as she states that the court described automobile liability insurance as a type of liability insurance. But the court also stressed that automobile insurance is a specific type of liability insurance. Again, had Congress or the Legislature intended to specifically reimburse foster families for automobile liability insurance, it could have (but has not) done so.
We also reject the minor's argument that because the state's Foster Family Home and Small Family Home Insurance Fund (Fund) specifically excludes coverage for "[a]utomobile injuries," we may infer that the Legislature "may logically have assumed that foster parents already were protected for automobile liability if they chose to allow a foster child to drive their car, which is why such liability is excluded from the Fund." (Health & Saf.Code, §§ 1527.1, 1527.3, subd. (c).) In fact, the Fund shall not be liable for "[a]ny bodily injury arising out of the operation or use of any motor vehicle ... owned or operated by, or rented or loaned to, any foster "parent" (as opposed to any foster child). (Health & Saf.Code, § 1527.3, subd. (c), italics added.) Whatever we may otherwise infer from the Legislature's intent in creating the Fund, it is clear that it did not address automobile insurance to enable foster children to drive a motor vehicle.
We agree with the juvenile court that while the purpose of juvenile dependency provisions are to "secure for the minor custody, care, and discipline as nearly as possible equivalent to that which should have been given by his or her parents," the care of a minor does not require payment for car insurance (as opposed to necessities such as food, clothing, and shelter). (§ 202, subd. (a).) Indeed, the minor's counsel represented to the juvenile court that Corrine's mother was unable to afford automobile liability insurance for the minor, which is no doubt also a financial reality for many fit and loving parents. The minor stresses public policy reasons for enabling foster children to drive a car. Like the juvenile court, we are sympathetic with the minor's desire to drive a car; however, federal and state law do not require the Bureau to pay for her automobile insurance. The juvenile court did not abuse its discretion in denying the minor's motion.

III.

Disposition
The order is affirmed.
We concur: RUVOLO, P.J., and RIVERA, J.
NOTES
[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.
[2] After the minor turned 18 (the age of majority) earlier this year, the juvenile court dismissed the juvenile dependency petition. The Bureau filed a motion to dismiss the appeal, arguing that because the juvenile court no longer has jurisdiction over the minor, the appeal is moot. We denied the motion on August 13, and will proceed to consider the merits of Corrine's appeal. (Los Angeles County Dept. of Children & Family Services v. Superior Court (2005) 126 Cal.App.4th 144, 150, 24 Cal.Rptr.3d 256 [because issue was capable of recurring without being resolved, and issue was of continuing public interest, court addressed merits of moot writ petition]; In re Jody R. (1990) 218 Cal.App.3d 1615, 1621-1622, 267 Cal.Rptr. 746 [exercising discretion to consider merits of issue, even though juvenile court had dismissed dependency proceedings]; Christina K. v. Superior Court (1986) 184 Cal.App.3d 1463, 1465-1466, 229 Cal.Rptr. 564 [court has inherent discretion to resolve issue of broad public interest, even when issue is moot].)
[3] Citing In re Carmen M. (2006) 141 Cal. App.4th 478, 46 Cal.Rptr.3d 117, respondent claims that we should review the juvenile court's order for abuse of discretion. Although it is true that the Carmen M. court stressed the juvenile court's broad discretion under sections 362 and 202, the actual question presented was whether the juvenile court lacked statutory authority to order the minor to submit to drug testing. (Carmen M. at pp. 486-490, 46 Cal.Rptr.3d 117.) Determining whether a statute authorizes specific relief is of course a separate inquiry from whether the juvenile court abused its discretion in granting or denying such relief. (In re Gina S. (2005) 133 Cal.App.4th 1074, 1082, 35 Cal. Rptr.3d 277 [interpretation of statute covering confidentiality of juvenile case files is legal question, while review of juvenile court order under that statute is for abuse of discretion].)
[4] The minor also argues that we may infer from the definition of "liability insurance" in Black's Law Dictionary that it includes automobile liability, because the definition states that liability insurance covers losses "such as a loss incurred by a driver who injures a pedestrian." (Black's Law Diet. (8th ed.2004) p. 817, col. 2.) Like the California Insurance Code, however, Black's Law Dictionary separately defines automobile insurance as "[a]n agreement to indemnify against one or more kinds of loss associated with the use of an automobile, including damage to a vehicle and liability for personal injury." (Id. at p. 815, col. 1.)