Filed 1/11/22  In re Ale.M. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re Ale.M. et al., Persons Coming Under the Juvenile Court Law. | B311540 (Los Angeles County Super. Ct. No. 20CCJP06043B-C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. ALEJANDRO M., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Hernan D. Vera, Judge.  Affirmed.

Anuradha Khemka, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Jacklyn K. Louie, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Defendant and appellant Alejandro M. (father) appeals from the juvenile court's dispositional orders requiring him to participate in parenting classes. We affirm.

## BACKGROUND

I. *The Family*

Father and T.A. (mother) are the parents of Ale.M. (born 2009) and Ala.M. (born 2018).[1] Mother also has three older children, including S.A. (minor half-sibling, born 2008) and Z.T. (adult half-sibling).

II. *Referral and Initial Investigation*

On October 2, 2020, the Los Angeles County Department of Children and Family Services (DCFS) received a referral alleging general neglect by mother with concerns raised regarding mother's alcoholism.

In response, a DCFS social worker made an unannounced visit to the motel where mother was staying. Ala.M. was observed with mother; Ale.M. mostly resided with father, but father brought her to mother almost every day while he was

---

[1] We refer to Ale.M. and Ala.M., collectively, as minors. Minors are the only subjects of this appeal. Mother is not a party to the appeal.

2

working.  Mother denied any history of or current drug use. Mother drank alcohol about three times per week.  Although mother denied having a current alcohol problem, she admitted that she did "'in the past[.]'"  Mother stated that she sometimes drank because she felt sad and overwhelmed.

Mother stated that she had been the subject of prior DCFS investigations because father "repeatedly call[ed] DCFS on her." Mother wished father would be supportive instead.  Mother reported a history of unreported domestic violence with father.

Mother submitted to an on demand drug test, which returned negative for all substances.

The social worker also interviewed minor half-sibling and adult half-sibling.  Minor half-sibling denied witnessing any physical incidents of domestic violence, but she reported seeing a lot of arguing between mother and father.  Adult half-sibling expressed concern about father, who had been verbally abusive toward mother in the past.

An unannounced visit by the social worker was also made to father's home.  Father reported his concerns that mother drank regularly and was financially unstable.  According to father, mother became aggressive when she drank and, on multiple occasions, he had verbal arguments with her because she was irritable and angry.  Mother was not drinking or intoxicated in the mornings when he dropped Ale.M. off, but she would be under the influence when father picked Ale.M. up.

Ale.M. told the social worker that her parents used to argue about five years ago because father did not like mother drinking.

3

III. *Dependency Petition*

On November 12, 2020, DCFS filed a dependency petition seeking the juvenile court's exercise of jurisdiction over minors and minor half-sibling. Brought pursuant to Welfare and Institutions Code section 300, subdivision (b)(1) (failure to protect),[2] the b-1 count in the petition alleged that mother had a history of and was a current user of alcohol, which rendered her incapable of providing the children with regular care and supervision.[3] Father was nonoffending.

IV. *Detention Hearing*

At the detention hearing on November 17, 2020, the juvenile court found that a prima facie showing had been made that minors were persons described by section 300. Minors were released to the parents under DCFS supervision.

V. *Jurisdiction/Disposition Report*

According to the March 2021 jurisdiction/disposition report, mother stated, "'I am not a current user of alcohol. Years ago, I would drink. I would drink when I had problems. . . . [F]ather . . . keeps calling in referrals on me. I am pregnant right now. I am not drinking. I take care of my kids.'" Mother reported that she had a relationship with father for eight years. They would argue and father pushed her one time. She had no

---

[2]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[3]     The petition also included a b-2 count regarding minor half-sibling based on drug abuse by her father, I.R. Because minor half-sibling is not a subject of this appeal and I.R. is not a party to the appeal, we do not discuss the background or adjudication of the b-2 count further.

intention of reunifying with father. She reported that father was very hard working and responsible for Ale.M.

VI. *Adjudication Hearing*

The adjudication hearing was held on March 15, 2021.

Mother pled no contest to the dependency petition. Father's attorney, noting that father was nonoffending, submitted. The juvenile court sustained the petition, declared minors dependents of the court, and placed minors home-of-parents under DCFS supervision.

As for the disposition pertaining to father, the juvenile court discussed DCFS's proposed case plan, reflecting "parenting, fatherhood class, family preservation." Father's counsel objected to father "do[ing] a program at this time since he's not offending." The court responded, "I think the parenting classes are a good idea. So I will order that, and I signed that case plan."

Later in the hearing, father's counsel repeated his objection to the case plan. Father's counsel stated: "I don't think it's narrowly tailored to eliminate any risk. Because he had nothing to do with anything on the petition. It doesn't really seem necessary for him to be enrolled in any parenting classes. . . . He did nothing wrong in this whole case." Unswayed, the juvenile court explained, "But [a] parenting class can make him aware of the issues that the children are dealing with and that are relevant in the case. So [a] parenting class will benefit . . . the children as well indirectly."

This timely appeal ensued.

**DISCUSSION**

Father's sole contention on appeal is that the juvenile court abused its discretion by ordering him to participate in parenting classes.

A. *Relevant Law*

A juvenile court has broad authority to "make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of" a dependent child. (§ 362, subd. (a); see also *In re Carmen M.* (2006) 141 Cal.App.4th 478, 486 (*Carmen M.*) [section 362, subdivision (a), has "been broadly interpreted to authorize a wide variety of remedial orders intended to protect the safety and well-being of dependent children"].)

"At disposition, the juvenile court is not limited to the content of the sustained petition when it considers what dispositional orders would be in the best interests of the children. [Citations.] Instead, the court may consider the evidence as a whole." (*In re Briana V.* (2015) 236 Cal.App.4th 297, 311 (*Briana V.*).) Thus, "there need not be a jurisdictional finding as to the particular parent upon whom the court imposes a dispositional order" (*ibid.*), and the court may "order a nonoffending parent to participate in services" (*In re D.L.* (2018) 22 Cal.App.5th 1142, 1148).

B. *Standard of Review*

Absent a clear abuse of discretion, we will not disturb a dispositional order. (*Briana V., supra*, 236 Cal.App.4th at p. 311.) "A court exceeds the limits of legal discretion if its determination is arbitrary, capricious or patently absurd. The appropriate test is whether the court exceeded the bounds of reason." (*In re L.W.* (2019) 32 Cal.App.5th 840, 851.)

6

C. *Analysis*

We find no abuse of the juvenile court's discretion in ordering father to participate in parenting classes.

As the juvenile court explained, such classes could increase father's awareness of the issues faced by minors as a result of mother's drinking and, by implication, improve his response to those issues.

Although father was nonoffending in the dependency petition, the record discloses several concerning aspects of his behavior that could be addressed, at least in part, through parenting classes. Father reported that mother drank regularly and would be under the influence when he picked Ale.M. up from her home, yet he still elected to leave Ale.M. with mother on a nearly daily basis. This raises questions about his ability to protect minors. Parenting classes could help father better understand ways of protecting minors from the behavior of mother that gave rise to the assumption of dependency jurisdiction. Additionally, there were multiple reports, including by Ale.M. and minor half-sibling, that father and mother argued a lot, and adult half-sibling claimed that father had been verbally abusive toward mother. Parenting classes could also educate father on the negative impact of arguing in front of minors.

Father relies on *In re Jasmin C.* (2003) 106 Cal.App.4th 177 (*Jasmin C.*), which is factually distinguishable from the instant case. In *Jasmin C.*, dependency jurisdiction was exercised based on an isolated, violent rampage perpetrated by the father. (*Id.* at pp. 179–181.) The mother was nonoffending: "She did not abuse her children, fail to protect them, or engage in any other inappropriate behavior." (*Id.* at p. 181.) Rather, she responded to the incident by "immediately interced[ing],

physically restrain[ing] and calm[ing] [the father], and direct[ing] another to call the police." (*Ibid.*) The juvenile court in *Jasmin C.* nevertheless ordered the mother to attend parenting education "without making any findings or giving any explanation." (*Ibid.*) The Court of Appeal reversed, explaining that "nothing in the record supported the order, which apparently was based on a rote assumption that [the] mother could not be an effective single parent without parenting classes, something belied by common sense and experience in 21st-Century America." (*Id.* at pp. 181–182.) Here, in contrast, the juvenile court provided an explanation and the record discloses a reasonable basis for imposing the parenting class requirement.

Given the broad discretion of the juvenile court when fashioning orders for the well-being of dependent children (§ 362, subd. (a); *Carmen M.*, *supra*, 141 Cal.App.4th at p. 486) and the court's authority to look beyond the contents of the sustained petition to the evidence as a whole (*Briana V.*, *supra*, 236 Cal.App.4th at p. 311), we cannot say that the court here acted in an arbitrary, capricious, or patently absurd manner.

## DISPOSITION

The March 15, 2021, dispositional orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, Acting P. J.
ASHMANN-GERST

We concur:


_____, J.
CHAVEZ


_____, J.
HOFFSTADT