Filed 8/22/14  In re S.A. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re S.A., a Person Coming Under the Juvenile Court Law. | H040427 (Santa Clara County Super. Ct. No. JD22100) |
| SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND CHILDREN'S SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>J.A.,<br><br>        Defendant and Appellant. | |

J.A. (mother) appeals from the juvenile court's dispositional order removing S.A. (child) (born 1998) from her physical custody.  On appeal, she contends the juvenile court's jurisdictional findings must be vacated because the allegations in the Welfare and Institutions Code section 300 petition fail to state a cause of action.[1]  Alternatively, she contends the jurisdictional findings are not supported by sufficient evidence.  She also asserts the juvenile court erred in failing to place child with her and in ordering substance abuse services as part of her case plan.  For the reasons set forth below, we affirm the order.

---

[1] Further unspecified statutory references are to the Welfare and Institutions Code.

## FACTUAL AND PROCEDURAL BACKGROUND

*The Section 300 Petition*

On September 17, 2013, the Santa Clara County Department of Family and Children's Services (Department) filed a petition pursuant to section 300, subdivisions (a) (serious physical harm), (b) (failure to protect), and (j) (abuse of a sibling). The petition alleged K.L. (father) and T.L. (stepmother) physically abused child. The petition listed mother's whereabouts as "unknown."

In an interview with a social worker, child said mother was a drug addict. Child did not know how to contact mother but would like to see mother again and potentially live with mother. On September 18, 2013, the juvenile court determined a prima facie showing had been made under section 300 and detained child.

*Jurisdiction/Disposition Report*

Several weeks later, the Department filed a jurisdiction/disposition report recommending the court sustain the petition and order family maintenance services for mother. The report outlined the prior child welfare history of child's case. A.A., mother's daughter and child's half-sister (half-sister), had been molested by her father for several years. The half-sister had been placed with her father when she was seven years old, because mother had been incarcerated for stealing. The half-sister was later placed with mother.

Child and her twin half-siblings were placed in protective custody in 2002 because of mother's mental illness, substance abuse, and neglect of the children's physical and mental needs. Reunification services for the twins were terminated in 2003 and they were relinquished for adoption that same year. Child was placed in family maintenance with mother. Family reunification services with father were terminated after he failed to participate in court-ordered services. Also that same year, child was removed from mother's care and placed in out-of-home care. Child was later placed with father in

2

family maintenance. In 2004, the dependency was dismissed and father was granted sole physical and legal custody.

Mother said she was diagnosed with bipolar disorder during the dependency case with her twins. She had started abusing drugs when she was 16 and had tried cocaine and used methamphetamine. She had not used methamphetamine for 10 years and had not used methamphetamine when she was pregnant. She used methamphetamine occasionally after half-sister was born in 1994. Before child was born, she used methamphetamine with child's father. After she lost custody of the twins, she used methamphetamine every day. She was arrested in 2006 for theft and went to jail. She completed drug rehabilitation after her release. She claimed she last used methamphetamine a year ago and had previously attended Alcoholics Anonymous (AA) and Narcotics Anonymous (NA) meetings.

Mother was presently working as a caretaker for an individual named Joyce H. in Atwater. Mother lived with Joyce H., and Joyce H. said she would be glad to have child live with them.

Mother said child had come to live with her for about a month in 2011. At the time, mother was in a shared living situation with roommates. The situation did not work, so mother and child moved to a shelter. Mother denied using drugs but admitted the shelter housed individuals in drug treatment recovery. Later, child returned to live with father.

The half-sister lived close to mother and talked to mother regularly. She believed mother was doing well and was hopeful child would live with mother.

Father did not want to participate in the case plan and said child could live with mother. Mother wanted child to live with her, and child wanted to live with mother. The Department recommended child be placed in family maintenance with mother.

3

*The Addendum Report*

In October 2013, the Department filed an addendum report. The report indicated child had expressed concerns about living with mother. Child was worried mother might relapse and may not have the necessary resources to care for her. Mother said her life was stable and she was in a position to provide safe and appropriate care for child. Mother asserted child may not want to move from her current foster home because she had a boyfriend at her school.

*The October 9, 2013 Hearing*

On October 9, 2013, the juvenile court held a hearing on jurisdiction. The parties negotiated changes to the section 300 petition, and agreed to strike the section 300, subdivision (a) (serious physical harm) allegations. The remaining allegations about mother under section 300, subdivisions (b) and (j) included: (1) mother's prior child welfare history including her loss of custody of the twins and child, and (2) mother's lack of consistent contact with child.

Mother requested the allegations against her be stricken, arguing "[t]he information . . . is clearly not germane to why we're here today, and it doesn't go to a finding that the child has suffered or is at risk of suffering substantial harm. It has to do with things that happened almost ten years ago." The juvenile court sustained the section 300 petition as amended and did not strike the allegations against mother, concluding "the fact that [child] was subject to a prior dependency, no matter how old she was, certainly gives this Court a historical context for what is happening today." A contested disposition hearing was set for the following month.

*The November 2013 Addendum Report*

The Department prepared another addendum report in November 2013. The report indicated child had skipped a visit with mother so she could attend a homecoming dance. Mother had canceled a weekend visit due to illness. Child visited mother once in

4

October and said cigarette smoke in the house made it difficult for her to breathe, so she spent the night at her half-sister's house. Child did not have her own bed at mother's house. There was another resident staying in the house with mother named "Denise." Mother told child she did not disclose Denise's presence in the house because "she has a history." Child said mother's house was dirty and had bugs. There were 13 dogs in the backyard that mother did not want the Department to know about. Child told mother about her difficulty breathing in the house and mother told her to "[s]top lying, you are fine."

Child's school therapist asserted child was afraid of visiting mother during her scheduled visit on November 22, 2013. The therapist opined child was not ready to be in mother's care, and mother had not been in child's life for a long period of time. Child was concerned mother would start using drugs again.

Mother said she believed child's visit went well. When asked about child's breathing problems in the house, mother responded "no, no, no." Mother insisted her housemate had accidentally had a cigarette in the house. Mother thought the almond trees were creating pollen, aggravating child's asthma. Mother explained that Denise did not live in the house and was her housemate's visiting daughter. Mother believed child was "blackmailing and threatening her" by disclosing details that would prohibit placement in mother's home. Mother maintained child did not want to move because of her boyfriend. Mother confirmed the presence of dogs in the backyard but explained the dogs were not going to be at the house permanently.

The Department recommended family reunification services and opined additional visits were needed to assess the suitability of child's placement.

*The November 6, 2013 Disposition Hearing*

On November 6, 2013, the juvenile court held a contested disposition hearing. The Department indicated it was now recommending reunification services for both

parents. Mother did not want reunification services and maintained she wanted the court to place child in her care and dismiss the case, or in the alternative, place child in her care on a plan of family maintenance. Father indicated he did not agree with the Department's recommendations, because he did not wish to reunify with child. Child agreed with the Department's recommendations. The court admitted the Department's November 2013 addendum report into evidence.

Linda Muratore, the social worker assigned to child's case, was called to testify as an expert risk assessment and provision of services for children and families in the dependency system. Muratore explained her original recommendation was to provide mother with family maintenance services. She changed her recommendation after several visits with mother were canceled and concerns arose after child's visit with mother in October 2013.

Muratore explained child had been removed from mother's care when she was three years old. After her removal, child had limited contact with mother. Child spent a month living with mother in 2011 but returned to live with father. Child was removed from mother's care due to mother's mental health issues, her substance abuse problems, and her neglect and lack of supervision of child's twin half-siblings.

Muratore acknowledged mother received treatment to ameliorate the problems that brought child into the dependency system but noted mother did not complete her case plan. Muratore did not know if mother had fully treated her mental health or substance abuse problems. Mother said she was going to AA and NA meetings, but had not provided any documents showing her participation. Mother had relapsed a year ago, but maintained it was a "one-time" relapse. Muratore disagreed with mother's characterization of her relapse and asserted mother needed to be in recovery for the rest of her life.

6

Muratore had advised mother to see a mental health therapist, but there was no evidence mother had followed through with the request. Mother had a history of mental health issues and had been diagnosed with depression in the past. Mother would get upset easily and would sometimes become irrational. Mother was not currently taking any medication but had received therapy and counseling in the past. Muratore acknowledged she did not have evidence mother was currently abusing drugs or suffering from mental health problems.

Muratore opined that "[child] has experienced early childhood trauma being exposed to substance abuse and not having her basic needs met. Originally, she wanted to go with her mother. As it came closer, she started to have a lot of fear about having that experience again. So, [child] could be re-traumatized just remembering the previous trauma she's had." If placement with mother did not succeed, Muratore believed child may develop serious mental health problems.

Additionally, Muratore noted four visits had been scheduled between child and mother but only one had taken place. Muratore was concerned about mother's home because of child's breathing issues and the 13 dogs in the backyard. Furthermore, mother had not been cooperative when asked to provide information about who was residing in the half-sister's house.

After Muratore's testimony and argument by the parties, the juvenile court took the matter under submission. On November 18, 2013, the juvenile court reached a decision. It found by clear and convincing evidence there is, or will be, a substantial danger to the child's physical health, safety, protection, or physical or emotional well-being and determined it was appropriate to remove child from father's care. Regarding mother's request for placement, the juvenile court found by clear and convincing evidence placing child with mother would be detrimental to child's physical and emotional well-being. The court ordered family reunification services for mother and

7

accepted father's waiver of reunification services. The court also ordered mother to complete a substance abuse assessment and drug treatment programs as part of her case plan.

## DISCUSSION

1. *Mother's Challenges to the Jurisdictional Findings*

First, we address mother's arguments regarding the jurisdictional findings made by the juvenile court under section 300. Mother claims the section 300 petition was insufficiently pleaded. She also claims insufficient evidence supports jurisdiction. Both of her arguments only challenge the allegations in the section 300 petition that pertain to her; she does not challenge the allegations in the petition that pertain to father.

"It is commonly said that the juvenile court takes jurisdiction over children, not parents. [Citations.] While this is not strictly correct, since the court exercises *personal* jurisdiction over the parents once proper notice has been given [citation], it captures the essence of dependency law. The law's primary concern is the protection of children. [Citation.] The court asserts jurisdiction with respect to a child when one of the statutory prerequisites listed in section 300 has been demonstrated. [Citation.] The acquisition of personal jurisdiction over the parents through proper notice follows as a consequence of the court's assertion of dependency jurisdiction over the child." (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1491.)

As the court noted in *In re Alysha S.* (1996) 51 Cal.App.4th 393, "a jurisdictional finding good against one parent is good against both. More accurately, the minor is a dependent if the actions of either parent bring her within one of the statutory definitions of a dependent." (*Id.* at p. 397.) Therefore, "[o]nce the child is found to be endangered in the manner described by one of the subdivisions of section 300--e.g., a risk of serious physical harm (subds. (a) & (b)), serious emotional damage (subd. (c)), sexual or other abuse (subds. (d) & (e)), or abandonment (subd. (g)), among others--the child comes

within the court's jurisdiction, even if the child was not in the physical custody of one or both parents at the time the jurisdictional events occurred." (*In re I.A.*, *supra*, 201 Cal.App.4th at p. 1491, citing *In re Claudia S*. (2005) 131 Cal.App.4th 236, 246; see also *In re X.S.* (2010) 190 Cal.App.4th 1156, 1161.)

Therefore, the Department contends mother's arguments are not justiciable, because even if this court reversed the finding of jurisdiction based on the allegations against mother, the juvenile court would still have jurisdiction over child based on the unchallenged allegations of neglect and abuse against father. The juvenile court would also continue to retain personal jurisdiction over mother and adjudicate her parental rights because that jurisdiction is derived from the court's jurisdiction over the minor and is unrelated to mother's alleged role in creating the conditions leading to the present dependency. (See *In re I.A.*, *supra*, 201 Cal.App.4th at p. 1492.) Accordingly, we would not be able to provide any effective relief to mother. (*Ibid.*; *Epstein v. Superior Court* (2011) 193 Cal.App.4th 1405, 1408.)

Mother asserts this court may address her jurisdictional challenges even though they pertain only to her, citing to *In re Aaron S*. (1991) 228 Cal.App.3d 202. In *In re Aaron S*., the appellate court addressed a father's challenge to the juvenile court's finding of jurisdiction under section 300, subdivision (g), based on his incarceration. (*In re Aaron S*., *supra*, at pp. 204-206.) The section 300 petition had also alleged jurisdiction based on mother's conduct, which was not challenged by the father on appeal. (*In re Aaron S*., *supra*, at pp. 204-206.) On appeal, the court reversed the juvenile court's finding of jurisdiction. (*Id.* at pp. 207-212.) However, none of the parties in *Aaron S*. discussed whether father's arguments were not justiciable due to the juvenile court's jurisdictional findings based on mother's conduct, and the appellate court's opinion does not discuss this issue. It is axiomatic that " ' "cases are not authority for propositions not

9

considered." ' " (*In re I.S.* (2002) 103 Cal.App.4th 1193, 1198.) Therefore, mother's reliance on *Aaron S.* is unfounded.

Nonetheless, appellate courts may generally exercise discretion and consider challenges to a juvenile court's jurisdictional finding if the finding "(1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) 'could have other consequences for [the appellant], beyond jurisdiction.' " (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763.) In *In re Drake M.*, the outcome of the appeal would be the difference between finding a father as an "offending" parent rather than a "nonoffending parent," a distinction that "may have far-reaching implications with respect to future dependency proceedings in this case and father's parental rights." (*Id.* at p. 763.) Therefore, the *Drake M.* court addressed the merits of the father's appeal.

Mother argues that like the situation presented in *Drake M.*, the sustained jurisdiction finding could have far-reaching implications in future dependency proceedings and on her parental rights. However, mother does not suggest a specific legal or practical consequence. *Drake M.* contemplated the classification of an "offending" versus a "nonoffending" parent, which may have ramifications as some courts have required parents be "nonoffending" to be given placement consideration under section 361.2.[2] (See *In re John M.* (2013) 217 Cal.App.4th 410, 420-425.) Here it appears the juvenile court gave mother placement consideration under section 361.2 without regard to her status as an "offending" or "nonoffending" parent.

Additionally, her contention the jurisdictional findings could have impacted the court's later finding of detriment is speculative. As the Department notes, during

_____

[2] Section 361.2 requires courts to place children with parents, if the parent requests custody, unless the court finds there is clear and convincing evidence of detriment.

10

disposition, the juvenile court may rely on "any relevant evidence including hearsay" to determine the child's best interest. (*In re Corey A.* (1991) 227 Cal.App.3d 339, 347.) Therefore, evidence of mother's prior child welfare history and of her lack of contact with child would have been considered regardless of whether these specific allegations were sustained in the section 300 petition.

Mother insists the trial court may have considered the jurisdictional findings against her when making its detriment finding. (*In re V.F.* (2007) 157 Cal.App.4th 962, 970.) This argument is speculative, and mother does not demonstrate the allegedly improper jurisdictional findings were essential to the juvenile court's later finding of detriment. In addition, the juvenile court's decision not to place child with mother due to a finding of detriment requires proof by clear and convincing evidence. (*In re Marquis D.* (1995) 38 Cal.App.4th 1813, 1828.) In contrast, a jurisdictional finding need only be proven by a preponderance of the evidence and cannot by itself support denial of placement under section 361.2. (*In re I.A.*, *supra*, 201 Cal.App.4th at pp. 1493-1494.)

Furthermore, as discussed by the *In re I.A.* court, "In any future dependency proceeding, a finding of jurisdiction must be based on current conditions. [Citation.] . . . Other relevant dependency findings similarly would require evidence of present detriment, based on the then prevailing circumstances of parent and child." (*In re I.A.*, *supra*, 201 Cal.App.4th at p. 1495.)

Accordingly, we decline to address mother's arguments about the juvenile court's jurisdictional findings.

2. *The Juvenile Court's Placement Decision*

Next, mother argues the juvenile court erred when it failed to place child in her custody, because insufficient evidence supported the court's finding of detriment.

11

**Statutory Framework and Standard of Review**

Section 361.2, subdivision (a), requires the juvenile court to place a dependent child with a previously noncustodial parent who requests custody unless the placement would be detrimental to the child's safety, protection, or physical or emotional well-being. Because the noncustodial parent has a constitutionally protected interest in custody, case law requires clear and convincing evidence of detriment to the child before the court can deny the noncustodial parent's request for custody. (*In re Marquis D.*, *supra*, 38 Cal.App.4th at p. 1828.) With its heightened standard of proof, this provision effectuates the legislative preference for placement with the previously noncustodial parent. (*In re Austin P.* (2004) 118 Cal.App.4th 1124, 1132.)

"We review the record in the light most favorable to the court's order to determine whether there is substantial evidence from which a reasonable trier of fact could find clear and convincing evidence that the children would suffer such detriment. [Citations.] Clear and convincing evidence requires a high probability, such that the evidence is so clear as to leave no substantial doubt." (*In re Luke M.* (2003) 107 Cal.App.4th 1412, 1426.)

**Evidence of Detriment to Child's Physical and Emotional Well-Being**

Mother claims there was insufficient evidence to warrant a detriment finding. However, there was evidence that when child visited mother she did not have her own bed, had difficulty breathing due to cigarette smoke, was allowed to stay at her half-sister's home even though the home was not assessed, and was exposed to inappropriate individuals at mother's house. During the hearing, the social worker testified there were 13 dogs in the backyard, which she did believe created a safe environment for a child. The juvenile court could have reasonably concluded the mother's housing conditions would be harmful to child.

12

Additionally, mother contends there was insufficient evidence she was not addressing her substance abuse and mental health issues. The social worker testified during the hearing there was no evidence mother was currently using drugs and had last used methamphetamine over a year before the present proceedings. Mother said she had attended AA and NA meetings in the past and was able to regulate her moods and emotions well. However, despite these claims mother failed to produce any documents indicating her participation in substance abuse or mental health programs. Mother also upset easily and was accusing child of blackmailing and threatening her.

Furthermore, there was sufficient evidence placement with mother would also be detrimental to child's emotional well-being. Child told her therapist she did not want to live with mother and was worried mother may relapse. Mother argues child's wishes are not dispositive, citing to *In re Patrick S*. (2013) 218 Cal.App.4th 1254. In *Patrick S*., the Fourth District reversed the juvenile court's finding that it would be detrimental for the son to be placed with his father based on insufficient evidence. (*Id*. at pp. 1262-1266.) The father had searched for his son for years but was unable to find him, because the mother, who suffered from mental illness, kept him away. (*Ibid*.) The father had no child protective services history, although the mother had accused him of sexually abusing the son, a claim that was unsubstantiated. Father and son had successful visits, and father enrolled himself in parenting classes. However, the son was not enthusiastic about living with father and requested to stay with his foster family so he could stay at his current high school. (*Id*. at p. 1259.)

Mother also insists *In re John M*. (2006) 141 Cal.App.4th 1564 is persuasive. In *John M*., a dependency petition was filed alleging John's mother physically abused him. Father had not paid for child support and had not had contact with John for several years. However, for the past year, father had maintained consistent contact with John and had asked for placement. John told the social worker he did not live with his father, because

13

his father lived in the country. (*Id*. at p. 1568.) The appellate court concluded there was insufficient evidence of detriment, because although John "was entitled to have his wishes [concerning placement] considered[, but] he was not entitled to decide where he would be placed." (*Id*. at p. 1570, citing *In re Luke M*., *supra*, 107 Cal.App.4th at p. 1426.) The court therefore concluded the Department failed to meet its burden to show detriment. (*In re John M*., *supra*, at pp. 1570-1571.)

Unlike the situations presented in *John M*. and *Patrick S*., child's preference not to be placed with mother was substantiated with valid concerns. Child was worried that mother would relapse, and mother had not been cooperative with the social worker. Additionally, child's preference not to be placed with mother was not the sole reason for the court's finding of detriment.

We conclude there is sufficient evidence that placement with mother would pose a risk to child's physical and emotional well-being. Accordingly, the juvenile court did not err in finding detriment.

3. *Social Worker's Testimony*

Mother argues the juvenile court should have disregarded the social worker's testimony during the disposition hearing because it was mere speculation and opinion, not evidence.

"It is the trial court's role to assess the credibility of various witnesses, to weigh the evidence to resolve the conflicts in the evidence. We have no power to judge the effect or value of the evidence, to weigh the evidence, to consider the credibility of witnesses or to resolve conflicts in the evidence or the reasonable inferences which may be drawn from that evidence." (*In re Casey D*. (1999) 70 Cal.App.4th 38, 52-53.)

The social worker, Muratore, was qualified to testify as an expert in risk assessment and provision of services for children and families in the dependency system. Contrary to mother's claim, she based her opinion on evidence, including her interviews

14

with mother and child and her visit to mother's home.  She did not impermissibly speculate.  Given Muratore's expertise, the juvenile court did not err in finding her testimony credible or giving her testimony a significant amount of weight.

    4.  *Substance Abuse Conditions*

    Lastly, mother argues the juvenile court erred when it ordered substance abuse conditions as part of her case plan, because there is no evidence she is currently suffering from a substance abuse problem.

    "A reunification plan ' "must be appropriate for each family and be based on the unique facts relating to that family." ' [Citation.]  Section 362, subdivision (c), states in pertinent part:  'The program in which a parent or guardian is required to participate shall be designed to eliminate those conditions that led to the court's finding that the minor is a person described by section 300.' " (*In re Basilio T*. (1992) 4 Cal.App.4th 155, 172 (*Basilio T*.), superseded by statute on another point as noted in *In re Lucero L*. (2000) 22 Cal.4th 1227, 1239-1242.)  Additionally, the juvenile court has broad discretion to make virtually any order necessary for the well-being of the dependent child.  (§ 361.2, subd. (b)(2); *In re Sergio C*. (1999) 70 Cal.App.4th 957, 960.)  The court has discretion to determine which services are appropriate for the care, supervision, custody, conduct, maintenance, and support of the child.  (§ 362, subd. (a).)  A juvenile court's dispositional orders for the reunification plan are reviewed for abuse of discretion.  (*In re Christopher H*. (1996) 50 Cal.App.4th 1001, 1006-1007.)  Under the abuse of discretion standard of review, we will not disturb the juvenile court's decision unless the court exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination.  (*In re Jasmine D*. (2000) 78 Cal.App.4th 1339, 1351.)

    Mother contends *In re Drake M*., *supra*, 211 Cal.App.4th 754 is persuasive.  In *Drake M*., our colleagues at the Second District reversed the juvenile court's disposition orders requiring the father to randomly test for drugs and participate in parenting courses

15

and drug counseling. (*Id*. at pp. 770-771.) The *Drake M*. court concluded these conditions were erroneously imposed, because there was no evidence to indicate father had a substance abuse problem aside from his use of medical marijuana pursuant to a physician's recommendation and no evidence father needed parenting courses. (*Ibid*.) The court concluded these conditions "could not reasonably be designed to eliminate *mother's* substance abuse and mental illness, which are the remaining conditions from which dependency jurisdiction was obtained and, thus, such orders were an abuse of discretion." (*Id*. at p. 770.) The *Drake M*. court cited to *Basilio T*. with approval, where the court found insufficient evidence supported a condition requiring a mother to participate in a substance abuse program. (*Basilio T*., *supra*, 4 Cal.App.4th at pp. 172-173.)

Here there was evidence mother had a history of substance abuse. Mother acknowledged she had started using drugs when she was 16 years old, and said she last used drugs in 2012. Mother also admitted she relapsed in 2011. Despite her history of substance abuse, mother did not provide any records of her participation in AA or NA meetings. Mother claimed she completed a substance abuse program after she was incarcerated in 2006, but there was no evidence she continued treatment.

Mother argues there is no evidence she suffers from a current substance abuse problem, or that her substance abuse led to the present dependency. However, a juvenile court can make "any and all reasonable orders for the care, supervision [or] custody . . . of the child" (§ 362, subd. (a)), which courts have "broadly interpreted to authorize a wide variety of remedial orders intended to protect the safety and well-being of dependent children . . . ." (*In re Carmen M*. (2006) 141 Cal.App.4th 478, 486.) Additionally, a " ' "reunification plan formulated to correct certain parental deficiencies need not *necessarily* address other types of conduct, equally deleterious to the well-being of a child, but which had not arisen at the time the original plan was formulated." '

16

[Citation.] However, when the court is aware of other deficiencies that impede the parent's ability to reunify with his child, the court may address them in the reunification plan." (*In re Christopher H*., *supra*, 50 Cal.App.4th at p. 1008.) Given mother's substance abuse history and her admitted relapse in 2011, the juvenile court did not abuse its discretion when it ordered the substance-abuse related conditions in the case plan.

## DISPOSITION

The juvenile court's order is affirmed.

_____
Premo, J.

WE CONCUR:

_____
Rushing, P.J.

_____
Elia, J.

17