Filed 6/23/21  In re G.C. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
### SECOND APPELLATE DISTRICT
### DIVISION SEVEN

| | |
|---|---|
| In re G.C. et al., Persons Coming Under the Juvenile Court Law. | B306907 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>E.P. et al.,<br><br>Defendants and Appellants. | (Los Angeles County Super. Ct. No. 18CCJP06370D-G) |

APPEAL from an order of the Superior Court of Los Angeles County, Kim L. Nguyen, Judge.  Affirmed in part and reversed in part.

Roni Keller, under appointment by the Court of Appeal, for Defendant and Appellant Anthony R.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Veronica Randazzo, Deputy County Counsel, for Plaintiff and Respondent.

# INTRODUCTION

Anthony R. appeals from the juvenile court's disposition order denying his request for custody of his children under Welfare and Institutions Code section 361.2, subdivision (a),[1] after the court removed them from the custody of their mother, E.P. Anthony contends substantial evidence did not support the court's finding that placing the children with him would be detrimental to their safety, protection, or physical or emotional well-being. Anthony also contends the court abused its discretion in ordering him to attend parenting education classes and requiring his visits with his children to be monitored.

After Anthony filed this appeal, the juvenile court ordered the children returned to E.P. and directed the Los Angeles County Department of Children and Family Services to provide Anthony with enhancement services. The Department argues this order renders part of Anthony's appeal moot. We conclude that Anthony's appeal is not moot and that substantial evidence did not support the court's finding of detriment under section 361.2, subdivision (a). We also conclude, however, that the juvenile court did not abuse its discretion in ordering Anthony to complete parenting classes or in requiring his visits to be monitored. Therefore, we reverse the court's order under section 361.2, subdivision (a), but affirm the other disposition orders.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

## FACTUAL AND PROCEDURAL BACKGROUND

A.      *The Juvenile Court Detains Anthony's Children*

E.P. has four children, nine-year-old G.C., seven-year-old A.P., five-year-old M.P., and six-month-old M.S., all of whom reside with E.P.  Anthony is the father of the three older children, but he does not live with them.[2]  D.S. is the father of M.S.  On October 26, 2019, while E.P. was holding M.S., D.S. pushed E.P. during an argument, "causing her to slam into the wall."  E.P. called the police, and the police contacted the Department.  The Department investigated and learned E.P. and D.S. had a history of domestic violence.

On December 3, 2019 the Department filed a petition under section 300, subdivisions (a) and (b), alleging D.S.'s "violent conduct" and E.P.'s failure to protect her children endangered the children's physical health and safety, created a detrimental home environment, and placed them at risk of serious physical harm.[3] The juvenile court detained all four children from their respective fathers and released them to E.P. with a safety plan that required E.P. to comply with a restraining order that prohibited any contact between E.P. and D.S.  The court also ordered the Department to "[i]nitiate due diligence" to locate Anthony.  E.P.

---

[2]      When discussing Anthony's contentions, we use the term "the children" to refer to G.C., A.P., and M.P.

[3]      The Department also alleged under section 300, subdivision (b), that E.P. had "unresolved mental and emotional problems," which endangered the children.  In an amended petition, the Department added counts under section 300, subdivisions (b) and (j), alleging that D.S.'s substance abuse and E.P.'s failure to protect the children placed them at risk of physical and emotional harm and damage.

3

told the social worker Anthony had not had contact with her or the children since October 2018.

On February 25, 2020 the Department filed a petition under section 385, asking the court to detain the children from E.P. because she was not complying with the restraining order that prohibited her from having contact with D.S. The court detained the children from E.P. and placed them in temporary emergency shelter care.

Shortly after the court detained the children from E.P., the Department located Anthony, and a social worker interviewed him for the first time in this case. Anthony stated he received "all of [the Department's] mail and knew there was a hearing scheduled for 03/03/2020 but was unsure about attending." Anthony told the social worker he had not had contact with his children for "a while" and "hoped to have contact with [them] once they were 18 [years old]." On learning his children had been detained from E.P., Anthony expressed an interest in having the court release them to him. Anthony disclosed that in 2013 E.P. hit him and that the incident resulted in a criminal case against E.P., which Anthony said was still "open." The Department also learned that, based on allegations of domestic violence between E.P. and Anthony in 2018, the Department filed a petition under section 300, subdivisions (a) and (b), but the court dismissed the petition with prejudice as "Not True."

B.    *The Court Finds Jurisdiction, Removes the Children from E.P., and Denies Anthony's Request for Custody*

On March 3, 2020 the juvenile court sustained the allegations in the petition related to the domestic violence between E.P. and D.S. and to D.S.'s substance abuse. The court

4

dismissed the remaining counts and directed the Department to assess the possibility of releasing Anthony's children to him.

The Department learned Anthony visited the children once after the Department located him at the end of February 2020. Anthony explained that he had not been able to visit because of the social distancing restrictions imposed at the beginning of the pandemic and that the caregiver would not allow in-person visits "due to Covid-19 concerns." The caregiver stated Anthony called the children approximately once a month, and Anthony said he had a few "video chats" with the children in addition to the phone calls. The caregiver reported that she also contacted Anthony to get his permission to give G.C. asthma medication and that G.C.'s condition improved substantially after he took the medication.[4] Anthony reported he was unemployed but was trying to return to school, currently "dealing with" some "health issues," and temporarily living with his mother. Anthony told the social worker he had "family support" to help him take care of the children.

At the June 22, 2020 disposition hearing the Department argued placing the children with Anthony under section 361.2, subdivision (a), would be detrimental to their safety, protection, or physical or emotional well-being. The Department stated that Anthony had "essentially given up with his children" and that, because Anthony was "in between homes," the Department did not "know which home to assess." The Department asserted, "It [did not] appear [Anthony] has a clear plan . . . of what he wants to do with the children." The Department recommended parenting education and monitored visitation for Anthony.

---

[4]    E.P. had refused to allow the caregiver to give G.C. his prescribed asthma medication for his persistent cough because, according to E.P., G.C. "was not asthmatic."

5

Anthony argued the Department failed to prove under section 361.2, subdivision (a), by clear and convincing evidence that placing his children with him would be detrimental to their safety, protection or physical or emotional well-being. Anthony claimed that he had "always been in [his children's] lives until recently, maybe 2018," but that, "due to friction" with E.P, he "stepped aside in order not to be involved in a relationship he felt was toxic." Anthony argued that the lack of a consistent relationship did "not rise to [the] level of detriment" and that, although the children did not want the court to place them with him, their wishes were "not dispositive." Anthony also argued that, even though the Department had not yet assessed Anthony's home, section 361.2, subdivision (b)(2), gave the Department three months after disposition to complete the inspection. Anthony acknowledged that the children had medical needs, but stated that there was "nothing in the evidence [showing] that [he] is not able to care for [the children]." Anthony also objected to the parenting education requirement in his case plan because the 2018 allegation related to "domestic violence issues" had been "dismissed."

The court removed the children from E.P. under section 361, subdivision (c), and denied Anthony's request for custody under section 361.2, subdivision (a). The court found "detriment by clear and convincing evidence," explaining that "emotional health is a component in addressing whether release [to Anthony] is possible." The court observed that Anthony "has had a very limited relationship with [his] children," that G.C. and A.P. said "it has been quite a long time since they've spoken with [Anthony]," and that Anthony indicated that, "because of [the] toxic dynamics with [E.P.], he did not want to engage in the lives of the three children." The court directed the Department to find suitable placement for the children, ordered Anthony to attend

6

parenting education classes, and required his visitation to be monitored.  E.P. and Anthony timely appealed.

C.     *The Court Returns the Children to E.P.*

On February 18, 2021, eight months after the disposition hearing, the juvenile court returned the children to E.P. and ordered the Department to provide "enhancement services" to Anthony.[5]  The court also ordered that "[a]ll prior orders not in conflict shall remain in full force and effect."

E.P. filed a request to dismiss her appeal, which this court granted.  The Department filed a motion to dismiss part of Anthony's appeal, arguing the return of the children to E.P. mooted his appeal from the disposition orders denying his request for custody under section 361.2, subdivision (a), and requiring him to complete parenting education classes.  This court directed Anthony to address the Department's motion to dismiss in his reply brief.

**DISCUSSION**

A.     *Substantial Evidence Did Not Support the Juvenile Court's Order Denying Anthony's Request for Custody Under Section 361.2, Subdivision (a)*

Anthony contends "there was neither evidence [n]or a substantiated finding that placement with . . . [him] would be detrimental to the safety, protection, or physical or emotional well-being of the minors."  The Department, in addition to arguing Anthony's appeal from the order denying his request for

_____

[5]     On March 22, 2021 we granted the Department's request for judicial notice of the juvenile court's February 18, 2021 minute orders.  (See Evid. Code, §§ 452, subd. (d), 459.)

7

custody under section 361.2, subdivision (a), is moot, argues substantial evidence supported the court's finding of detriment. We're with Anthony on these issues.

1. *Applicable Law and Standard of Review*

"Section 361.2, subdivision (a) requires a court ordering removal of a child first to determine whether there is a noncustodial parent who wants to assume custody. The court shall place the child with that parent, unless that placement would be detrimental to the child's safety, protection, or physical or emotional well-being." (*In re A.C.* (2020) 54 Cal.App.5th 38, 42; see *In re K.B.* (2015) 239 Cal.App.4th 972, 979.) "The statute 'evinces the legislative preference for placement with the noncustodial parent when safe for the child.'" (*In re C.M.* (2014) 232 Cal.App.4th 1394, 1401; see *In re Maya L.* (2014) 232 Cal.App.4th 81, 97 [if a noncustodial parent wants to assume custody of the child, "the court is then required to place the child with that parent unless it finds that doing so would be detrimental to the physical or emotional well-being of the child"].)

"[T]he party opposing placement with a nonoffending parent has the burden to show by clear and convincing evidence that the child will be harmed if the nonoffending parent is given custody." (*In re C.M.*, *supra*, 232 Cal.App.4th at p. 1402; see *In re A.C.*, *supra*, 54 Cal.App.5th at p. 43 ["[o]nly clear and convincing evidence can establish the necessary detriment"]; *In re T.G.* (2013) 215 Cal.App.4th 1, 20 ["'"[I]t is the party opposing placement[, pursuant to section 361.2,] who has the burden to show by clear and convincing evidence that the child will be harmed if the noncustodial parent is given custody."'"].) "Clear and convincing evidence requires a high probability, such that the evidence is so clear as to leave no substantial doubt." (*In re Patrick S.* (2013) 218 Cal.App.4th 1254, 1262; see

8

*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 998 [clear and convincing "'requires a finding of high probability'"].) "In general, when presented with a challenge to the sufficiency of the evidence associated with a finding requiring clear and convincing evidence, the court must determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by this standard of proof." (*Conservatorship of O.B.*, at p. 1005; accord, *In re I.R.* (2021) 61 Cal.App.5th 510, 520; *In re V.L.* (2020) 54 Cal.App.5th 147, 155.)

      2.     *The Appeal from the Court's Ruling Under Section 361.2, Subdivision (a), Is Not Moot*

"'[T]he critical factor in considering whether a dependency appeal is moot is whether the appellate court can provide any effective relief if it finds reversible error.'" (*In re Rashad D.* (2021) 63 Cal.App.5th 156, 163; see *In re D.N.* (2020) 56 Cal.App.5th 741, 757 ["'An appeal may become moot where subsequent events, including orders by the juvenile court, render it impossible for the reviewing court to grant effective relief.'"]; see, e.g., *In re Caden C.* (2021) 11 Cal.5th 614, 643 [a subsequent decision to terminate parental rights "renders moot [an] earlier decision not to terminate parental rights"].) However, "'"[a]n issue is not moot if the purported error infects the outcome of subsequent proceedings."'" (*In re E.T.* (2013) 217 Cal.App.4th 426, 436; accord, *In re D.N.*, at p. 758; see *In re J.P.* (2017) 14 Cal.App.5th 616, 623 ["'"On a case-by[-]case basis, the reviewing court decides whether subsequent events in a dependency case have rendered the appeal moot and whether its decision would affect the outcome of the case in a subsequent proceeding."'"].)

9

Here, it is true that, because the juvenile court has returned the children to E.P., the court cannot place the children with Anthony, even if we reversed the court's finding of detriment under section 361.2, subdivision (a); this provision no longer applies.  (See *In re Zacharia D.* (1993) 6 Cal.4th 435, 439 ["section 361.2 applies only when the child is first removed from the custodial parent's home"]; *In re Liam L.* (2015) 240 Cal.App.4th 1068, 1082 ["section 361.2, subdivision (a) applies only when the minor is first removed from the custodial parent"]; *In re Miguel C.* (2011) 198 Cal.App.4th 965, 970 ["[i]t is axiomatic that a court cannot award custody to a noncustodial parent without first removing the child from the custodial parent"].)  Anthony, however, argues the court's finding of detriment will "impede [him] from the proper exercise of his parental and familial rights now and in the future."  Although Anthony could have been more precise in identifying how the court's finding will prejudice him, his general point is correct: The court's detriment finding could negatively impact his parental rights in future proceedings in this case.

Although the juvenile court returned the children to E.P., the court retained jurisdiction, and the possibility the court will ultimately terminate Anthony's parental rights remains.  If the juvenile court proceeds to a hearing under section 366.26, the court may use the detriment finding against Anthony under section 361.2, subdivision (a), as a basis for, or a factor weighing in favor of, terminating Anthony's parental rights.  (See *In re A.G.* (2020) 58 Cal.App.5th 973, 993 ["'certain prior findings by the juvenile court (e.g., that returning the child to the physical custody of the parent would create a substantial risk of detriment to the physical or emotional well-being of the child) shall constitute a sufficient basis for the termination of parental rights unless the juvenile court finds one of six specified circumstances

10

in which termination would be detrimental [to the child]'"]; *In re Marquis D.* (1995) 38 Cal.App.4th 1813, 1829 ["[s]hould the court fail to place the child with the noncustodial parent, the stage is set for the court to ultimately terminate parental rights"]; see also *In re John M.* (2013) 217 Cal.App.4th 410, 421 ["[i]f the dependency court finds that placement with the noncustodial parent would be detrimental, the court proceeds as to that parent as if it were removing the child from the custodial, offending parent"]; cf. *In re S.S.* (2020) 55 Cal.App.5th 355, 360 [reversing an order terminating a noncustodial father's parental rights because "[a]bsent [the] impermissible grounds for removal there wasn't clear and convincing evidence that returning the child to [the] father would be detrimental to her"]; *In re D.H.* (2017) 14 Cal.App.5th 719, 730-731 [juvenile court erred in terminating a father's parental rights because "[a]t no stage" in the dependency proceeding did the juvenile court find that the father "was an unfit parent or that awarding him custody of [the child] would be detrimental to the child"].)  Therefore, Anthony's challenge to the juvenile court's detriment finding under section 361.2, subdivision (a), is not moot.

        3.     *Substantial Evidence Did Not Support the Juvenile Court's Detriment Finding Under Section 361.2, Subdivision (a)*

Substantial evidence did not support the juvenile court's finding that placing the children with Anthony would be detrimental to their emotional well-being.  The court cited the lack of a relationship between Anthony and his children and statements by G.C. and A.P. that they had not spoken to him in a long time.  Section 361.2, subdivision (a), requires more.

In making a finding of detriment under section 361.2, subdivision (a), "the court weighs all relevant factors to

11

determine if the child will suffer net harm." (*In re A.C.*, *supra*, 54 Cal.App.5th at p. 43.) "While the child's wishes, sibling bonds and the child's relationship with the noncustodial parent may be considered by the juvenile court in determining whether placement of a dependent child with a noncustodial, nonoffending parent would be detrimental to the child's physical or emotional well-being, none of these factors is determinative." (*In re C.M.*, *supra*, 232 Cal.App.4th at p. 1402.) "An 'alleged lack of a relationship between [a] father and [a child] is not, by itself, sufficient to support a finding of detriment for purposes of section 361.2, subdivision (a).'" (*In re Adam H.* (2019) 43 Cal.App.5th 27, 33; accord, *In re Abram L.* (2013) 219 Cal.App.4th 452, 464; *In re John M.* (2006) 141 Cal.App.4th 1564, 1570.) "Even when a child prefers not to be placed with a noncustodial parent, that preference is outweighed by the 'long-term benefits [minors] gain from becoming an integrated member of a family.'" (*In re Adam H.*, at p. 33; see *In re K.B.*, *supra*, 239 Cal.App.4th at p. 980 ["'a child's preference is not the deciding factor in a placement decision'"]; *In re Patrick S.*, *supra*, 218 Cal.App.4th at p. 1265 [same]; *In re John M.*, at p. 1570 [while the child "was entitled to have his wishes considered, he was not entitled to decide where he would be placed"].)

The juvenile court erred in finding detriment under section 361.2, subdivision (a), based on the lack of a relationship between Anthony and his children. (See *In re C.M.*, *supra,* 232 Cal.App.4th at p. 1403 ["neither [the child's] understandable wish to remain . . . in the only home she had ever known, nor the alleged lack of an established relationship with [the] father, was sufficient to constitute substantial evidence of the high level of detriment required under section 361.2(a)"]; *In re Patrick S.*, *supra*, 218 Cal.App.4th at p. 1262 [lack of an established relationship was not substantial evidence to support a finding

12

that placing a child with his father would be detrimental to the child].) True, Anthony is somewhat estranged from his children. But there was no evidence, much less clear and convincing evidence, the children would suffer the kind of emotional detriment required under section 361.2, subdivision (a), to deny placement with Anthony. (See *In re Patrick S.*, at p. 1263 ["[w]hen the parent is competent, the standard of detriment is very high"]; cf. *In re A.C.*, *supra*, 54 Cal.App.5th at p. 43 [substantial evidence supported the juvenile court's finding of detriment under section 361.2, subdivision (a), where the basis for the finding was that the child "would experience something akin to trauma should she be placed with" her father].)

Anthony was involved in his children's lives when they were younger and took care of them for two months in the summer of 2017. (See *In re Abram L.*, *supra*, 219 Cal.App.4th at p. 464 [placing the children with their father would not have been detrimental because the father "was not a stranger to the children"].) The Department cites one statement by each of the children, made seven months before the disposition hearing, about his or her relationship with Anthony.[6] Once Anthony reentered the children's lives, however, he called them at least once a month, spoke with them by video, and authorized their caregiver to administer critical asthma medications for G.C. that E.P. would not permit. That Anthony could not visit the children in person because of the social distancing restrictions of the pandemic does not, as the Department asserts, "evince[ ] his lack of interest" in their lives.

---

6    When the social worker interviewed the children in early November 2019, G.C. said "he does not talk to [Anthony]," A.P. said his relationship with Anthony was "not great," and M.P. "reported she [did] not have a father."

13

Any concerns the Department had about Anthony's alleged domestic violence incident from 2018 did not support a finding of detriment because the court dismissed the allegation in a prior dependency proceeding as untrue. (See *In re C.M.*, *supra*, 232 Cal.App.4th at p. 1403 [mother's "unsubstantiated claim" the father abused alcohol did not support the finding of detriment, "especially since neither formed the basis of jurisdiction"]; *In re Abram L.*, *supra*, 219 Cal.App.4th at p. 463 [allegations of the father's "'unresolved problem with alcohol and a history of substance abuse'" did not support a finding of detriment because the juvenile court dismissed the allegations].) Aside from this alleged incident, the Department does not point to anything suggesting that placing the children with Anthony would put them at substantial risk of detriment.

The Department asserts Anthony's "lack of involvement," "ambivalence toward inserting himself into the dependency proceedings," and "lack of motivation to consistently visit his children" supported the court's finding. But even assuming these characterizations of Anthony's conduct were true, the Department did not show how the children would suffer emotionally from these shortcomings. As discussed, Anthony's disappearance from the children's lives for almost a year and a half may show he was not always a model parent, but under section 361.2, subdivision (a), that is not enough to support a finding of detriment. (See *In re John M.*, *supra*, 141 Cal.App.4th at p. 1571 [father's absence for four years did not support a detriment finding]; see also *David B. v. Superior Court* (2004) 123 Cal.App.4th 768, 789-790 [juvenile court should focus on "the essential question of whether [the child's] safety, protection, [or] physical or emotional well-being would be placed at substantial risk in [her father's] care" because "[i]deal parents are a rare—if not imaginary—breed"].)

14

B.    *The Juvenile Court Did Not Abuse Its Discretion in Ordering Anthony To Attend Parenting Classes*

Anthony argues the juvenile court abused its discretion in ordering him to attend parenting classes.  The Department argues that Anthony's appeal from the court's order is moot and that, even if it is not, the court did not abuse its discretion in ordering Anthony to attend parenting classes as part of his case plan.

Anthony's appeal from the June 22, 2020 order requiring him to attend parenting classes is arguably moot because he did not appeal from the juvenile court's February 18, 2021 order, which stated, among other things, that all prior orders that did not conflict with the court's order on that date would remain in full force and effect.[7]  Thus, even if we reverse the June 22, 2020 order requiring Anthony to attend parenting classes, the February 18, 2021 order still required him to attend those classes, and Anthony did not appeal from that order.  (Cf. *In re Julien H.* (2016) 3 Cal.App.5th 1084, 1088, fn. 7 [father's appeal from pre-detention removal and detention orders was moot because those orders "were superseded" by the disposition orders, and "there is no effectual relief that may be provided by the appellate court"].)  Nevertheless, even if Anthony's appeal from the June 22, 2020 order for parenting classes is technically moot, we exercise our discretion to consider the order on the merits to clarify the juvenile court's authority to require him to attend parenting classes.  (Cf. *In re C.V.* (2017) 15 Cal.App.5th 566, 571; *In re C.C.* (2009) 172 Cal.App.4th 1481, 1489.)

The juvenile court did not abuse its discretion in ordering Anthony to attend parenting classes.  Section 362,

---

[7]    The juvenile court made similar orders on December 14, 2020, January 4, 2021, and February 2, 2021.

subdivision (a), provides that, once the juvenile court determines a child is a dependent child under section 300, "the court may make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child . . . ." (See *In re S.P.* (2020) 53 Cal.App.5th 13, 17; see also *In re Korbin Z.* (2016) 3 Cal.App.5th 511, 518 [section 362, subdivision (a), "grants '"broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accordance with this discretion"'"]; *In re Carmen M.* (2006) 141 Cal.App.4th 478, 486 [section 362, subdivision (a), authorizes "a wide variety of remedial orders intended to protect the safety and well-being of dependent children"].) "'The problem that the juvenile court seeks to address need not be described in the sustained section 300 petition. [Citation.] In fact, there need not be a jurisdictional finding as to the particular parent upon whom the court imposes a dispositional order.'" (*In re D.L.* (2018) 22 Cal.App.5th 1142, 1148; see *In re Briana V.* (2015) 236 Cal.App.4th 297, 311 ["[a]t disposition, the juvenile court is not limited to the content of the sustained petition when it considers what dispositional orders would be in the best interest of the children"].)

"'The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly. On appeal, this determination cannot be reversed absent a clear abuse of discretion.'" (*In re D.P.* (2020) 44 Cal.App.5th 1058, 1071; see *In re J.P.*, *supra*, 14 Cal.App.5th at p. 624 ["If the parent is appealing the reunification services ordered by the dependency court at the disposition hearing, the Court of Appeal reviews the dependency court's decision for abuse of discretion."].)

It was undisputed that Anthony had minimal in-person contact with his children after 2018 and that the children did not

16

want to live with him. There was also evidence each of the children has medical or behavioral issues that would be challenging for any parent. For example, M.P. "frequently gets into arguments with her two siblings, especially when she does not get her way," and "tries to attack her siblings daily"; A.P. has problems sitting still, appears to have a speech impediment, and "walks on the tips of his toes"; and as discussed, G.C. has asthma that requires medication. Given Anthony's lack of familiarity with the children's lives, the court did not abuse its discretion in requiring Anthony to attend parenting classes to help him prepare for the difficulties of reassuming a parental role after a lengthy absence. (See *In re D.L.*, *supra*, 22 Cal.App.5th at p. 1148 [juvenile court may require a nonoffending parent to participate in family maintenance services].)

### C. *Anthony's Appeal from the Disposition Order Requiring Monitored Visitation Is Forfeited and Meritless*

Anthony did not object to the juvenile court's order requiring him to have monitored visitation with the children.[8] Therefore, to the extent his appeal from that order is not moot,[9]

---

[8] At the conclusion of the disposition hearing, Anthony objected to the court's "findings," but he did not state the grounds for the objection. This "catch-all" objection did not preserve a challenge to the order requiring monitored visitation. (See *In re E.A.*, *supra*, 209 Cal.App.4th at p. 791 ["without grounds stated, the objections were meaningless"].)

[9] Anthony's appeal from the order requiring monitored visitation raises the same mootness issue his appeal from the order for parenting classes does: The February 18, 2021 order (and several other post-June 22, 2020 orders) stated that all prior

it is forfeited.  (See *In re S.B.* (2004) 32 Cal.4th 1287, 1293 ["a reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court"]; *In re F.P.* (2021) 61 Cal.App.5th 966, 974 [same]; *In re E.A.* (2012) 209 Cal.App.4th 787, 791 [by failing to raise the issue in the juvenile court, the father forfeited his contention that the court erred in denying visitation while he was incarcerated]; *In re Anthony P.* (1995) 39 Cal.App.4th 635, 641 [mother "waived her right to assert error as to sibling visitation on appeal by not properly raising the issue below"].)

But even if Anthony's appeal is not moot and his argument is not forfeited, the court did not abuse its discretion.  Section 362.1, subdivision (a)(1)(A), provides, "Visitation shall be as frequent as possible, consistent with the well-being of the child." (See *In re D.P.*, *supra*, 44 Cal.App.5th at p. 1070.)  However, "[n]o visitation order shall jeopardize the safety of the child."  (§ 362.1, subd. (a)(1)(B); see *In re T.M.* (2016) 4 Cal.App.5th 1214, 1218.) "The power to regulate visits between dependent children and their parents rests with the juvenile court and its visitation orders will not be disturbed on appeal absent an abuse of discretion."  (*In re D.P.*, at p. 1070; see *In re Brittany C.* (2011) 191 Cal.App.4th 1343, 1356 ["[w]e review an order setting visitation terms for abuse of discretion"].)

The same evidence that supported the order requiring Anthony to attend parenting classes supported the order requiring monitored visitation; namely, Anthony's inexperience with managing the current needs of his children.  The court did not abuse its discretion in requiring a monitor to be present during Anthony's visits to protect the children and help Anthony

---

orders, such as the visitation order, remained in full force and effect.

address any conflicts or issues that might jeopardize the children's safety during those visits.  (See § 362.1, subd. (a)(1)(B).)

## DISPOSITION

The juvenile court's finding it would be detrimental to place the children with Anthony under section 361.2, subdivision (a), is reversed.  The court's disposition orders requiring Anthony to complete a parenting course and requiring monitored visitation are affirmed.


SEGAL, J.


We concur:


PERLUSS, P. J.


FEUER, J.