Filed 7/13/23  In re M.B. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re M.B., et al., Persons Coming Under the Juvenile Court Law. | B318130 |
| _____ | (Los Angeles County Super. Ct. No. 21CCJP01737) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| MAURICE B., et al., | |
| Defendants and Appellants. | |

APPEALS from orders of the Superior Court of Los Angeles County, Jean M. Nelson, Judge.  Dismissed in part and affirmed in part.

Emery El Habiby, under appointment by the Court of Appeal, for Defendant and Appellant Maurice B.

Serobian Law and Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant Brandon W.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jacklyn K. Louie, Principal Deputy County Counsel, for Plaintiff and Respondent.

––––––––––––––––––––––––

## INTRODUCTION

Maurice B., the father of 15-year-old Malaysia B., and Brandon W., the father of nine-year-old Zion W., appeal from findings and orders the juvenile court made on January 18, 2022. Maurice argues the court erred in sustaining a supplemental petition under Welfare and Institutions Code section 387[1] removing Malaysia from his custody, ordering him to attend parenting and anger management classes, and requiring his visits with Malaysia to be monitored. Brandon argues the court erred in denying his request at the six-month review hearing for custody of Zion and requiring his visits with Zion to be monitored.

In July 2022, while this appeal was pending, the juvenile court terminated its jurisdiction over Malaysia and Zion and issued custody and visitation orders granting their mother, Michelle (who is not a party to this appeal), sole custody of both children, with monitored visitation for Maurice and Brandon.

––––––––––––––

[1] Undesignated statutory references are to the Welfare and Institutions Code.

Maurice timely appealed from the July 2022 orders, but Brandon did not.

Because the July 2022 custody and visitation orders regarding Zion are final, we cannot provide Brandon any effective relief in this appeal. Therefore, we dismiss his appeal from the January 18, 2022 orders regarding Zion. In Maurice's appeal, which is not moot because he appealed from the July 2022 orders, we affirm the juvenile court's jurisdiction findings and disposition orders regarding Malaysia.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Department Files a Petition Under Section 300, and the Juvenile Court Detains Malaysia and Zion*

In February 2021 Malaysia called law enforcement because she became scared after a fight between her mother and Brandon. Michelle told sheriff's deputies that Brandon became angry with her, pushed her into her bedroom, and grabbed her by the neck and that Zion witnessed the incident. Brandon admitted to the social worker that he had choked and "body-slammed" Michelle, but said that he later "calmed down and walked out." He described the incident as a "misunderstanding."

Malaysia told the social worker that her mother and Brandon fought often, that Brandon was violent, and that she and Zion feared Brandon. Zion said that Brandon was "mean" to his mother and yelled at her and that it scared him when Brandon banged on their door loudly at night. Zion said Brandon once threatened Michelle with one of his two guns.

On April 15, 2021 the Department filed a petition under section 300, subdivisions (a) and (b), on behalf of Malaysia and

3

Zion, alleging Michelle and Brandon had "a history of engaging in violent altercations in the children's presence" and that their violent conduct "endangers the children's physical health and safety and places the children at risk of serious physical harm, damage, and danger."

The juvenile court detained Malaysia from Michelle and Maurice, detained Zion from Michelle and Brandon, and placed both children with a maternal aunt. The court ordered monitored visitation for all three parents. The court granted Michelle's request for a temporary restraining order against Brandon and ordered him not to have any contact with Malaysia.

B. *The Juvenile Court Sustains an Amended Petition and Places Malaysia with Maurice*

In May 2021 the Department filed a first amended petition under section 300, subdivisions (a) and (b), adding allegations Michelle and Brandon physically abused Malaysia and Zion by hitting them with a belt. The Department soon filed a second amended petition adding allegations that Michelle and Maurice had a history of domestic violence and that Michelle obtained a temporary restraining order against Maurice in 2015.

At a jurisdiction hearing in June 2021 the juvenile court found Malaysia and Zion were persons described by section 300, subdivisions (a) and (b). The court sustained counts a-1 and b-1 (domestic violence between Michelle and Brandon) and a-3 and b-3 (physical abuse by Brandon). The court also sustained counts a-2 and b-2 (physical abuse by Michelle), but struck the allegation Michelle hit Malaysia with a belt because the court found Michelle no longer did that. The court dismissed counts a-4 and b-4 (domestic violence between Michelle and Maurice). The

4

court granted a three-year restraining order protecting Michelle, Malaysia, and Zion from Brandon.

At the disposition hearing in July 2021 counsel for Malaysia expressed concerns about Maurice's unresolved "anger management issues" and said Maurice called the maternal aunt a "bitch" in front of Malaysia. Counsel stated Malaysia wanted to visit Maurice, but she was "not entirely comfortable with the idea of living with him yet." The juvenile court declared Malaysia a dependent child of the court. The court removed Malaysia from Michelle and placed her with Maurice on the following conditions: (1) that Maurice "comply with parenting and anger management in therapy"; (2) that no one discuss the case or make negative remarks around Malaysia about her parents; and (3) that the Department initiate a plan for Malaysia to transition to Maurice's home. The court ordered family maintenance services for Malaysia and Maurice. The court also ordered Maurice to participate in individual counseling to address anger management, domestic violence, and parenting issues and to participate in conjoint counseling with Malaysia if her therapist recommended it. The court ordered Michelle to participate in a support group for victims of domestic violence, parenting classes, and individual counseling. The court ordered monitored visitation for Michelle.

The juvenile court also declared Zion a dependent child of the court, removed him from Michelle and Brandon, and ordered reunification services and separate monitored visitation for both parents. The court also ordered custody exchanges of Zion to occur at a police station without either parent present.

C. *The Juvenile Court Sustains a Supplemental Petition, Removes Malaysia from Maurice, and Returns Malaysia and Zion to Michelle*

Michelle complied with her case plan by completing a parenting class. Maurice did not comply with his case plan. Among other things, he did not provide the Department with proof he had enrolled in counseling, and he violated the court's order to refrain from making negative comments to Malaysia. In July 2021 the maternal aunt told the social worker that Maurice called Malaysia, read aloud from the case reports about the allegations of abuse committed by Brandon, and told Malaysia, "You disgust me," which caused Malaysia to cry. When the social worker spoke with Maurice the next day about his comments to Malaysia, Maurice denied making them and complained that, as a man and a father, he was not being treated fairly by the Department. The social worker invited him to attend the Department's support group for fathers, and he agreed to speak with the social worker who led the group.

The following day Malaysia told the social worker that Maurice complained about the maternal relatives during his visits and that Malaysia wanted him to stop. In September 2021 the social worker told Maurice that speaking about the case or saying negative things about the maternal relatives made Malaysia cry or feel angry. Maurice denied saying those things and said the maternal relatives were lying. A few weeks later Malaysia again told the social worker that she wanted Maurice to stop talking about Michelle and the maternal aunts. Malaysia said that Maurice needed "counseling" and "anger management," that she was no longer comfortable having overnight visits with Maurice, and that, when Maurice talked about the case or spoke

6

negatively about the maternal relatives, Malaysia thought about "hurting others."

In October 2021 the Department reported to the juvenile court that Maurice's "negative berating comments" endangered Malaysia's physical and emotional well-being. The Department requested, and the juvenile court issued, an order removing Malaysia from Maurice. When the social worker informed Maurice of the court's order, he accused the social worker and the maternal relatives of lying and told the social worker, "You are going to lose your job. You are a dumb racist bitch."

On October 20, 2021 the Department filed a subsequent petition under section 342 alleging Maurice emotionally abused Malaysia by frequently making disparaging comments about Malaysia, Michelle, and Michelle's family. The Department also filed a supplemental petition under section 387 seeking to remove Malaysia from Maurice. The Department alleged that Maurice did not comply with the court's orders to participate in parenting and anger management classes, that he violated the court's order not to discuss the case or make negative remarks about Michelle in Malaysia's presence, and that Maurice's conduct endangered Malaysia's physical health and safety and put her at risk of serious physical harm. When the social worker read the allegations to Maurice, he said that they were not true and that it was Malaysia who initiated discussion about the case and the maternal relatives. Maurice stated, "What was I supposed to do, tell her to shut up?"

At the October 25, 2021 detention hearing on the subsequent and supplemental petitions, the court removed Malaysia from Maurice and ordered monitored visitation and

7

phone calls. The court ordered the Department to assess whether Michelle could have unmonitored and overnight visits.

At the January 18, 2022 combined jurisdiction and disposition hearing regarding Malaysia the court dismissed without prejudice the subsequent petition under section 342 for emotional abuse. The court sustained the supplemental petition under section 387. The court found Maurice's derogatory statements about Malaysia, Michelle, and Michelle's relatives violated the court's conditions for releasing Malaysia to Maurice. The court also found Maurice was "not complying with the case plan in that it does not appear he is addressing parenting and anger management in his individual counseling." And, the court stated, "the persistent nature and extent of his negative comments shows he is not working on the issues at all." In contrast, the court found Michelle had made substantial progress in her case plan. The court removed Malaysia from Maurice and placed her with Michelle on the condition Michelle comply with family preservation services.

The court ordered Maurice to participate in parenting and anger management classes and individual counseling to address age-appropriate discipline for children and anger management and domestic violence issues. The court ordered monitored visitation for Maurice. Maurice timely appealed from the juvenile court's jurisdiction findings on the sustained supplemental petition under section 387 and the court's disposition orders.

The juvenile court also conducted on January 18, 2022 a six-month review hearing under section 366.21, subdivision (e), regarding Zion. The court denied Brandon's request that the court place Zion with him or alternatively that Brandon have

8

unmonitored visitation.  The court stated that Brandon had not completed even half of the 52-week domestic violence program and that Brandon had committed "really serious domestic violence . . . that included him strangling the mother until she fell to her knees and threatening mother with a gun."  The court stated Brandon "may be making progress, but he has to make a lot more for the court to consider return or even unmonitored visits."  The court released Zion to Michelle.  Brandon timely appealed from the juvenile court's orders under section 366.21, subdivision (e).

D.    *The Juvenile Court Terminates Jurisdiction, Grants Michelle Sole Custody of Both Children, and Orders Monitored Visitation for Maurice and Brandon*

At the July 22, 2022 review hearing under section 364, the juvenile court awarded Michelle sole legal and physical custody of Malaysia and Zion and ordered monitored visitation for Maurice and Brandon.  On July 26, 2022, after receiving custody and visitation orders, the court terminated its jurisdiction over Malaysia and Zion.[2]  Maurice timely appealed from the court's July 2022 orders; Brandon did not.

---

[2]    We granted the Department's motion to take judicial notice of the juvenile court's July 22, 2022 and July 26, 2022 orders. (See Evid. Code, §§ 452, subd. (d), 459.)

# DISCUSSION

## A. *Brandon's Appeal Is Moot; Maurice's Appeal Is Not*

### 1. *Applicable Law*

"Juvenile dependency appeals raise unique mootness concerns because the parties have multiple opportunities to appeal orders even as the proceedings in the juvenile court proceed." (*In re N.S.* (2016) 245 Cal.App.4th 53, 59.) "'[T]he critical factor in considering whether a dependency appeal is moot is whether the appellate court can provide any effective relief if it finds reversible error.'" (*In re Rashad D.* (2021) 63 Cal.App.5th 156, 163; see *In re D.P.* (2023) 14 Cal.5th 266, 275.) An "appeal may become moot where subsequent events, including orders by the juvenile court, render it impossible for the reviewing court to grant effective relief." (*Rashad D.*, at p. 163.) "A reviewing court must '"decide on a case-by-case basis whether subsequent events in a juvenile dependency matter make a case moot and whether [its] decision would affect the outcome in a subsequent proceeding."'" (*D.P.*, at p. 276.) "'When no effective relief can be granted, an appeal is moot and will be dismissed.'" (*In re J.A.* (2020) 47 Cal.App.5th 1036, 1050-1051.)

Even when a case is moot, a court may exercise its "inherent discretion" to reach the merits of the dispute. *(In re D.P., supra,* 14 Cal.5th at p. 282.) Discretionary review generally is appropriate only when a case presents an issue of broad public interest that is likely to recur, when the controversy between the parties may recur, or when a material question remains for the court's determination. (*Ibid.*) The Supreme Court in *D.P.* identified several non-exhaustive additional factors for

10

evaluating whether discretionary review of a moot case may be warranted. (*Id*. at pp. 284-286.) First, the court may consider whether the challenged jurisdiction finding could impact current or future dependency proceedings, for example, by influencing the child protective agency's decision to file a new dependency petition or the juvenile court's determination about further reunification services. (*Id*. at p. 285.) Second, the court may consider the nature of the allegations against the parent: "The more egregious the findings against the parent, the greater the parent's interest in challenging such findings." (*Id*. at p. 286.) Third, the court may consider whether the case became moot due to prompt compliance by parents with their case plan: "It would perversely incentivize noncompliance if mootness doctrine resulted in the availability of appeals from jurisdictional findings only for parents who are less compliant or for whom the court has issued additional orders." (*Ibid*.)

> 2. *We Cannot Grant Brandon Any Effective Relief in His Appeal from the Order at the Six-month Review Hearing Denying His Request for Custody or Unmonitored Visitation*

We asked the parties to submit supplemental briefing on whether we should dismiss the appeals as moot in light of the juvenile court's July 2022 orders awarding Michelle custody of the children, ordering monitored visitation, and terminating jurisdiction. In a supplemental letter brief Brandon argues his appeal is not moot because the juvenile court's errors "are not isolated, but set the stage and resulted in the later orders." But that is not the standard for mootness. Brandon's appeal is moot because we cannot provide him any effective relief. Even if we

11

were to reverse the juvenile court's January 18, 2022 order denying his request for custody or unmonitored visitation, the court's now-final July 2022 custody and visitation order would preclude placing Zion with him or allowing unmonitored visitation. Because we cannot provide Brandon any effective relief, his appeal from the January 18, 2022 orders under section 366.21, subdivision (e), is moot. (See *In re D.P.*, *supra*, 14 Cal.5th at p. 276 [case becomes moot when events ""render[ ] it impossible for [a] court, if it should decide the case in favor of plaintiff, to grant him any effect[ive] relief""].)

Nor is it appropriate to exercise our discretion to hear Brandon's moot appeal under *In re D.P.*, *supra*, 14 Cal.5th 266. Brandon does not argue the challenged orders could impact future dependency proceedings; the findings involving Brandon, though very concerning, were not especially egregious for allegations of physical domestic violence; and the case became moot because the juvenile court returned Zion to Michelle and terminated jurisdiction, not because Brandon promptly complied with his case plan. No other factor justifies reaching the merits of his moot appeal. (See *id.* at p. 286 ["no single factor is necessarily dispositive of whether a court should exercise discretionary review of a moot appeal"].)[3]

### 3. *Maurice's Appeal Is Not Moot*

Unlike Brandon, Maurice appealed from the juvenile court's July 2022 orders. Therefore, his appeal from the January 18, 2022 jurisdiction findings and disposition orders is not moot

---

[3]     *In re Samuel A.* (2021) 69 Cal.App.5th 67, cited by Brandon, did not involve mootness.

because we can provide him effective relief if we rule in his favor in this appeal and in his appeal from the July 2022 orders. (See *In re Rashad D.*, *supra*, 63 Cal.App.5th at p. 164 ["in addition to the appeal from the jurisdiction finding, an appeal from the orders terminating jurisdiction and awarding custody is necessary for this court to be able to provide effective relief"]; *In re J.S.* (2011) 199 Cal.App.4th 1291, 1295 [juvenile court's order terminating jurisdiction did not moot the appeal from prior orders where the "exit orders [were] also pending appeal"].)[4]

The Department argues Maurice's appeal is moot because in his opening brief in his appeal from the July 2022 orders (the only brief filed so far in that appeal), Maurice, according to the Department, challenges the "custody orders but not the termination of jurisdiction." Maurice's notice of appeal in that case, however, states he is appealing from "[o]rders from the Section 364 hearing on 07/22/2022" and lists as hearing dates "7/26/2022, 7/22/2022, and 7/18/2022." Those are the correct orders, and they include the order terminating jurisdiction. And a timely challenge to a custody and visitation order includes an implicit challenge to the accompanying order terminating jurisdiction and a request to vacate the latter order for the limited purpose of reversing the former. In any event, putting aside whether an appellant's opening brief in one appeal can moot a prior appeal, the jurisdiction rule in dependency cases under *Rashad D.* requires that the appellant file a timely notice of appeal from the order terminating jurisdiction, not that the appellant make good or even the right arguments in his or her opening brief.

---

[4]     A custody and visitation order is commonly referred to as an "exit order." (*In re T.S.* (2020) 52 Cal.App.5th 503, 513)

13

B.     *The Juvenile Court Did Not Err in Sustaining the*
       *Supplemental Petition, Removing Malaysia from*
       *Maurice, Ordering Maurice To Attend Parenting and*
       *Anger Management Classes, and Requiring His Visits*
       *To Be Monitored*

       1.     *Applicable Law and Standard of Review*

When a child protective agency seeks to change the placement of a dependent child from placement with a parent to a more restrictive placement, the agency must file a supplemental petition under section 387.  (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1161; Cal. Rules of Court, rule 5.560(c).)  "In the jurisdictional phase of a section 387 proceeding, the court determines whether the factual allegations of the supplemental petition are true and whether the previous disposition has been ineffective in protecting the child.  [Citations.]  If the court finds the allegations are true, it conducts a dispositional hearing to determine whether removing custody is appropriate.  [Citations.]  A section 387 petition need not allege any new jurisdictional facts, or urge different or additional grounds for dependency because a basis for juvenile court jurisdiction already exists.  [Citations.]  The only fact necessary to modify a previous placement is that the previous disposition has not been effective in protecting the child."  (*T.W.*, at p. 1161; see *In re D.D.* (2019) 32 Cal.App.5th 985, 989-990.)  We review the juvenile court's jurisdiction and disposition findings for substantial evidence.  (*T.W.*, at p. 1161; *D.D.*, at p. 990.)

14

## 2. *Substantial Evidence Supported the Juvenile Court's Finding the Previous Disposition Had Not Been Effective in Protecting Malaysia*

Maurice argues the juvenile court erred in sustaining the section 387 petition because substantial evidence did not support the court's finding his failure to comply with the court's orders put Malaysia "at a substantial risk of harm." As an initial matter, Maurice appears to confuse the standard for jurisdiction under section 300, subdivision (b), with the standard for moving a child from placement with a parent to a more restrictive placement under section 387. When a child protective agency files a supplemental petition under section 387, the juvenile court already has jurisdiction, and the "law does not require that a fact necessary to establish jurisdiction under section 300 be established to warrant a change in placement." (*In re A.O.* (2010) 185 Cal.App.4th 103, 110.) To sustain the supplemental petition, the juvenile court only had to find the previous disposition was not effective in protecting Malaysia. (See *T.W.*, *supra*, 214 Cal.App.4th at p. 1161.)

Which is what the juvenile court found. The court found that Maurice made "really negative comments about [Michelle] and the maternal relatives" and "very negative comments about Malaysia herself" and that these comments violated the court's conditions for releasing Malaysia to Maurice. The court further found Maurice's behavior was very damaging to Malaysia.

Substantial evidence supported the juvenile court's findings. Despite the court's order, Maurice continued to disparage Michelle and her family and discuss the case allegations with Malaysia. In July 2021 Maurice read Malaysia the report of Brandon's abuse and told Malaysia that she

15

"disgusted" him. Between June and September 2021 the social worker warned Maurice five times not to criticize the maternal relatives when he was around Malaysia. In September 2021 Malaysia told the social worker that she wanted Maurice to stop talking about Michelle and the maternal family, that she did not want to have overnight visits with Maurice, and that she felt she was doing better since she left Maurice's home. Malaysia also said Maurice's negative talk made her think of hurting other people. In November 2021 the social worker read Malaysia the allegations in the supplemental petition, and Malaysia said they were true. Malaysia said, "I love my dad, but he really needs help. My dad would always talk bad to me about my mom and aunts and it made me really mad. I have felt like wanting to hurt people because of the stuff he would say. I would get so mad at him and it would just make me sad."

Maurice attempts to deflect or minimize his responsibility for his conduct by asserting that he "only spoke of the mother and the maternal relatives when [Malaysia] brought them up" and that "it was understandable [he] might discuss the mother and the maternal relatives with" Malaysia because there were "frequent custody exchanges" and "continuous conflict over visits." But claiming "the child started it" did not excuse Maurice's violations of the court's order, which required Maurice to refrain from speaking negatively about the maternal relatives, even if Malaysia raised the topic. By continuing to criticize Michelle and her family in front of Malaysia in violation of the court's order, Maurice brought Malaysia into the conflict, allowing his anger to take priority over Malaysia's well-being.

Maurice also argues that, even if he violated the juvenile court's order by speaking negatively about the maternal relatives,

16

it was "unlikely to recur" because he "had enrolled in e-counseling and was refraining from discussing case issues or [Michelle] in [Malaysia's] presence." The record does not support Maurice's suggestion his problematic behavior was unlikely to recur. At the January 2022 jurisdiction and disposition hearing Maurice produced a receipt showing he had participated in six phone sessions with an online therapist, but he submitted no evidence he was addressing anger management, domestic violence, or parenting issues during those sessions, as the court had ordered. Maurice never gave the Department an enrollment or progress letter indicating he was addressing the case issues, and he refused to provide verification his therapist was approved by the Department.

Finally, Maurice's behavior around Malaysia undermined his assertion he was learning to control his anger. As late as November 8, 2021, after Maurice had completed three of his six therapy sessions, Malaysia told the social worker, "I got tired of [Maurice] always talking bad about my mom. I love my dad, but he really needs help and to get into parenting and anger management classes. Once he does that and is doing better, then I will want to talk to him."

3. *Substantial Evidence Supported the Juvenile Court's Order Removing Malaysia from Maurice*

When a section 387 petition seeks to remove a child from parental custody, the Department must prove by clear and convincing evidence that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned

17

home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (§ 361, subd. (c)(1); see *In re D.D.*, *supra*, 32 Cal.App.5th at p. 996 ["'When a section 387 petition seeks to remove a minor from parental custody, the court applies the procedures and protections of section 361.'"]; *In re T.W.*, *supra*, 214 Cal.App.4th at p. 1163 [same].) "'The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child.' [Citation.] The court may consider a parent's past conduct as well as present circumstances." (*In re N.M.* (2011) 197 Cal.App.4th 159, 169-170.)

"When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011; see *In re V.L.* (2020) 54 Cal.App.5th 147, 149.) "In conducting its review, the court must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*O.B.*, at pp. 1011-1012.)

Maurice contends the juvenile court erred in removing Malaysia from his custody because there were reasonable means to protect her without removal, such as ordering the Department "to make unannounced home visits" and providing "family preservation services" and "conjoint counseling." Maurice does

18

not explain how those alternatives would have prevented him from continuing to make harmful negative remarks to Malaysia. The juvenile court reasonably concluded Maurice was unlikely to change his behavior because he failed to accept responsibility for the harm he caused Malaysia. The court found Maurice "is just in complete denial, so I think he will continue to violate this court's orders and continue to say really damaging things to and in front of Malaysia. So those findings further support my jurisdiction findings and now support my removal order." (See *In re V.L.*, *supra*, 54 Cal.App.5th at p. 156 ["The inference from [the father's] denial is that he is less likely to change his behavior in the future."]; *In re A.F.* (2016) 3 Cal.App.5th 283, 293 ["In light of mother's failure to recognize the risks to which she was exposing the minor, there was no reason to believe the conditions would not persist should the minor remain in her home."].)

Maurice also contends he was enrolled in counseling and "learning to refrain from discussing the case issues or the mother" in Malaysia's presence. But as discussed, there was no evidence that Maurice was addressing parenting and anger management issues in counseling or that his behavior with Malaysia was improving. Substantial evidence supported the juvenile court's finding by clear and convincing evidence that placing Malaysia with Maurice posed a substantial risk of harm to her and that there were no reasonable means to protect her except by removing her from his custody. (See *In re Cole C.* (2009) 174 Cal.App.4th 900, 918 [removing the child was necessary where the father did not accept voluntary service referrals and did not acknowledge the inappropriate nature of his parenting techniques].)

4. *The Juvenile Court Did Not Abuse Its Discretion in Ordering Maurice To Attend Parenting and Anger Management Classes*

Maurice argues the juvenile court abused its discretion in ordering him to attend parenting and anger management classes. Section 362, subdivision (a), provides "the court may make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support" of a child described by section 300. Such orders may include "a direction to participate in a counseling or education program," so long as "[t]he program in which a parent or guardian is required to participate shall be designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300." (§ 362, subd. (d); see *In re Daniel B.* (2014) 231 Cal.App.4th 663, 673.) "'The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly. On appeal, this determination cannot be reversed absent a clear abuse of discretion.'" (*In re D.P.* (2020) 44 Cal.App.5th 1058, 1071; see *In re I.R.* (2021) 61 Cal.App.5th 510, 522 ["We review the juvenile court's disposition case plan for an abuse of discretion."].)

Maurice argues that he did not need parenting or anger management classes and that Malaysia "was often drawn into the conflict" with Michelle's family about scheduling visits. Maurice admits that the conflict was "upsetting" to him "and sometimes caused him to vent," but he contends that the court should have ordered him to address parenting and anger management in individual counseling. But that's what the juvenile court ordered at the disposition hearing six months earlier, and it did not stop Maurice from complaining and venting

20

to Malaysia.  In ordering Maurice to attend classes, the court stated that "it appears he really does need to do parenting [classes] because he doesn't acknowledge how his own behavior is very damaging to his child and what his responsibility is towards her and how to handle his frustration with her. . . .  Parenting classes teach an adult how to deal with that frustration.  I hoped he would address it in individual counseling, but there is no evidence that he has done that."  Given Maurice's lack of progress in controlling his anger, the juvenile court acted well within its discretion in ordering him to attend parenting and anger management classes.  (See *In re Carmen M.* (2006) 141 Cal.App.4th 478, 486 [juvenile court has "broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accordance with this discretion"].)

5.      *The Juvenile Court Did Not Abuse Its Discretion in Ordering Monitored Visits*

Visitation between a parent and child must be as frequent as possible, consistent with the well-being of the child.  (§ 362.1, subd. (a)(1)(A); see *In re D.P.*, *supra*, 44 Cal.App.5th at p. 1070.)  However, "[n]o visitation order shall jeopardize the safety of the child."  (§ 362.1, subd. (a)(1)(B); see *In re T.M.* (2016) 4 Cal.App.5th 1214, 1218.)  "The power to regulate visits between dependent children and their parents rests with the juvenile court and its visitation orders will not be disturbed on appeal absent an abuse of discretion."  (*D.P.*, at p. 1070; see *In re Brittany C.* (2011) 191 Cal.App.4th 1343, 1356 ["[w]e review an order setting visitation terms for abuse of discretion"].)  The juvenile court ordered Maurice's visits with Malaysia to be

monitored, "given the extraordinary nature" of Maurice's negative statements to Malaysia. The same evidence that supported the juvenile court's jurisdiction finding under section 387, the removal order under section 361, subdivision (c)(1), and the order to attend classes supported the court's order for monitored visitation.

Maurice argues the court should have allowed unmonitored visitation because he and Malaysia "had a close and bonded relationship," Malaysia loved Maurice and "initially requested to live with him," and Maurice was participating in online counseling. Malaysia expressed interest in living with Maurice (as well as with her maternal aunt) in June 2021, after the court removed her from Michelle and placed her with her maternal aunt, and before Malaysia had ever lived with Maurice. But in November 2021, after living with Maurice, Malaysia said that his criticism of her mother and aunts made her angry and sad and that she did not want to have contact with Maurice until he got help and was "doing better." The juvenile court did not abuse its discretion in requiring a monitor to be present during Maurice's visits to ensure Maurice refrained from making harmful negative remarks. (See § 362.1, subd. (a)(1)(B); *In re D.P., supra,* 44 Cal.App.5th at p. 1071 ["juvenile court reasonably exercised its discretion to limit mother to monitored visits"].)

22

**DISPOSITION**

Brandon's appeal from the juvenile court's orders under section 366.21, subdivision (e), regarding Zion is dismissed. The court's jurisdiction findings on the section 387 petition regarding Malaysia are affirmed. The court's disposition orders removing Malaysia from Maurice, requiring him to complete parenting and anger management classes, and requiring monitored visitation are affirmed.


SEGAL, J.


We concur:


PERLUSS, P. J.


FEUER, J.